**Esther H. OUELLETTE et al.**

**v.**

**MAINE BONDING & CASUALTY CO.**

Supreme Judicial Court of Maine.

Argued March 13, 1985.

Decided July 23, 1985.

Wright & Mills, P.A., Nancy Diesel Mills, S. Peter Mills (orally), Skowhegan, for plaintiffs.

Leen and Emery, P.A., David J. Leen, David H. Simonds (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Plaintiffs, Esther H. Ouellette and Arthur J. Ouellette, appeal from a judgment for the Defendant, Maine Bonding & Casualty Company, entered in the Superior Court (Somerset County) upon the Defendant insurer's motion for summary judgment. The Superior Court approached the matter as one of contract law, and concluded that the Plaintiffs had not provided the Defendant with as prompt notice of an auto accident as they were by their contract obligated to do. The Plaintiffs urge that a rule of reasonableness rather than strict contract law should govern here. We sustain their appeal.

In January, 1978, Plaintiff Arthur Ouellette purchased an automobile liability insurance policy from the Defendant, Maine Bonding and Casualty Company. The policy included uninsured motorist coverage, and was in full force and effect on the day of the collision that gave rise to this case. Part E of the insurance policy included the following provision:

> We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

On June 1, 1978, Plaintiff Esther Ouellette was alone in the insured vehicle when she stopped at a stop sign on Hartland Avenue, in Pittsfield. Carol L. Flynn, operating a truck owned by her husband, and uninsured, then hit the rear of the Ouellette vehicle. Mrs. Ouellette was treated at a local hospital for an injury to her neck and was released the same day.

Four years went by. On August 27, 1982, the Plaintiffs' attorney notified the Defendant's agent by letter concerning the Plaintiffs' potential claim under the uninsured motor vehicle provision of their policy. On October 25, 1983, the Plaintiffs commenced an action against the Defendant, seeking coverage under the Defendant's policy for (1) personal injuries to Mrs. Ouellette; and (2) loss of consortium to Mr. Ouellette. In its answer, the Defendant insurer asserted as an affirmative defense that the Plaintiffs had failed to give appropriate notice to the Defendant and contended that the insurer was prejudiced by the late notice.

At pretrial conference in March, the Defendant insurer agreed to the Plaintiffs' Proposed Stipulations and Admissions involving Esther Ouellette's medical expenses, the lack of insurance coverage by Carol Flynn, and the status of the Plaintiffs' insurance policy with the Defendant.

Three weeks later the Defendant moved for summary judgment in its behalf arguing that it was entitled to summary judgment as a matter of law because of the Plaintiffs' failure to notify promptly the Defendant of the accident. Two months thereafter, the Plaintiffs moved for summary judgment in their behalf and on the issue of liability under the policy. The Superior Court consolidated these motions and heard them on May 30, 1984.

Six weeks after hearing the Superior Court granted the Defendant's motion for summary judgment and denied the Plaintiffs' motion for summary judgment. The presiding justice ruled that the plain language of the policy controlled:

> The Court recognizes the "'obvious design' of [Maine's] uninsured motorist coverage statute: ... At the same time, however, an insurer's liability for uninsured motorist claims is not unlimited. In this case the insured's policy unambiguously provides that the Defendant "must be notified promptly of how, when and where the accident or loss hap-

**1234**

pened." This requirement is not inconsistent with the uninsured motorist statute, 29-A M.R.S.A. § 2902, and therefore controls the determination of the issue before the Court.

Subsequently, the Plaintiffs filed a motion for Amended or Additional Findings and for Amendment of the Judgment. Significantly, the Plaintiffs asked the presiding justice to make a finding of whether the Defendant insurer was prejudiced by the untimely notice. The presiding justice declined to provide such findings, declaring:

The Court's decision was not based on either prejudice to the insurer or the date Plaintiffs first knew that the other motorist was uninsured. The purpose of a notice provision in an insurance policy is to allow the insurer an opportunity to investigate the circumstances surrounding an accident giving rise to a claim reasonably soon after the accident has occurred. Notice four years after an accident is, prejudicial to the insurer in that their investigative opportunity has been negatively affected. *The date a claimant first discovers that another motorist is uninsured does not in any way bear on the duty to inform the insurer of an accident where, as here, such a duty is created by the express terms of the policy.* Therefore, neither a finding of prejudice to the insurer, nor a finding of when Plaintiffs learned the other motorist was uninsured, was necessary to the Court's decision on the motion for summary judgment. Findings on those issues would have been inappropriate. (emphasis supplied).

On appeal here from that judgment, the Plaintiffs argue that the Defendant insurer was not entitled to summary judgment because, regardless of the language of the insurance policy, the Defendant failed to show that it suffered prejudice in its ability to investigate or defend the claim that resulted from the timing of the Plaintiffs' notice. The Defendant insurer responds that the presiding justice correctly held

that the express terms of the insurance policy control. In the alternative, the Defendant argues that the Plaintiffs' delay in giving notice substantially prejudiced its ability to investigate and defend the claim.

In jurisdictions where courts have addressed similar issues, results are divided. *See generally* Couch on Insurance 2d (Rev. ed.) § 49:127; Comment, *The Materialty of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice,* 74 Dick.L.Rev. 260 (1969–1970).

Following the traditional rule, many courts have held that to escape liability or its duty to defend, a liability insurer need not show that it was prejudiced by an insured's unreasonable or unexplained delay in giving notice. *See, e.g., Marez v. Dairyland Insurance Co.,* — Colo. —, 638 P.2d 286 (1981); *State Farm Mutual Automobile Insurance Company v. Porter,* 221 Va. 592, 272 S.E.2d 196 (1980). The theory behind the traditional rule is that an insurance policy is a contract and that delay in giving notice constitutes a breach of contract, making the presence or absence of prejudice to the insurer immaterial. Other courts, however, declare that while an unreasonable or unexcused delay may raise a *presumption* of prejudice, this presumption may be overcome by the insured's showing of an absence of such prejudice. *See, e.g., Ehlers v. Colonial Penn Insurance Co.,* 81 Wis.2d 64, 259 N.W.2d 718 (1977). Still other courts hold that prejudice is but a *factor* in determining reasonableness of the delay itself. *See, e.g., Greer v. Zurich Insurance Co.,* 441 S.W.2d 15 (Mo.1969).

Still another group of courts have adopted the rule that in order to escape liability or its duty to defend because of an insured's unexcused delay in giving notice, a liability insurer is required to show that it was prejudiced by the insured's delay. *See, e.g., Pennsylvania General Insurance Co. v. Becton,* — R.I. —, 475 A.2d 1032 (1984); *Johnson Controls, Inc. v.*

*Bowes,* 381 Mass. 278, 409 N.E.2d 185 (1980).[1] This view represents the modern trend. *See* 8 J. Appleman, *Insurance Law and Practice* § 4734 at 70 (1981); 32 A.L.R. 4th at 157. Some have criticized the contract basis of the traditional notice rule and have observed that an insurance contract is not a negotiated agreement, but rather what we would call a contract of adhesion, because the terms are dictated by the insurance company to the insured;[2] thus, they reason, the traditional result of forfeiture is an undeserved windfall to the insurer. *See, e.g., Brakeman v. Potomac Insurance Co.,* 472 Pa. 66, 371 A.2d 193, 196–197 (1977).

 We are prepared to abandon the analysis of a negotiated contract. We follow *Brakeman,* in finding the modern view to be the better-reasoned approach. We therefore conclude that to avoid either its duty to defend or its liability thereunder based on an insured's delay in giving notice, a liability insurer must show (a) that the notice provision was in fact breached, and (b) that the insurer was prejudiced by the insured's delay. Further, the burden of proof is on the insurer to demonstrate prejudice. *Accord Brakeman,* 371 A.2d at 198; *Morales v. National Grange Insurance Company,* 176 N.J.Super. 347, 423 A.2d 325, 327 (1980).

 In general, proof of prejudice to an insurer is a question of fact. *See e.g., Weaver Brothers v. Chappel,* 684 P.2d 123, 126 (Alaska 1984); *Pulse v. Northwest Farm Bureau Insurance Company,* 18 Wash.App. 59, 566 P.2d 577, 599 (1977). Because in the instant case the presiding justice followed the contract-based traditional rule, the Superior Court has made no express finding of whether there existed any genuine issue of prejudice to the insurer. We thus vacate the judgment of the Superior Court and remand for a reconsid-

eration of the consolidated motions for summary judgment.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring:

---

1. *See also Globe Indemnity Co. v. Blomfield,* 115 Ariz. 5, 562 P.2d 1372 (1977); *Indiana Insurance Co. v. Williams,* — Ind. —, 448 N.E.2d 1233 (1983).

2. On contracts of adhesion *see generally Dairy Farm Leasing Co., Inc. v. Hartley,* 395 A.2d 1135, 1139–1140 n. 3 (Me.1978).