March 5, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1667

DENNIS VANHAAREN,

Plaintiff, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. David M. Cohen, U.S. Magistrate Judge]

Before

Selya, Circuit Judge,

Higginbotham,* Senior Circuit Judge,

and Cyr, Circuit Judge.

Francis M. Jackson for appellant.

Michael S. Wilson with whom Louise K. Thomas and Pierce, Atwood,

Scribner, Allen, Smith & Lancaster were on brief for appellee.

March 5, 1993

CYR, Circuit Judge. The district court determined that
CYR, Circuit Judge.

plaintiff Dennis VanHaaren had forfeited coverage under the

*Of the Third Circuit, sitting by designation.

uninsured motorist policy issued by defendant State Farm Mutual

Automobile Insurance Company ("State Farm") by not complying with

State Farm's requests that he submit to an independent medical

examination ("IME"). The district court granted summary judgment

in favor of State Farm, and VanHaaren appealed. We affirm.

I

BACKGROUND

VanHaaren was involved in an automobile collision with

an uninsured motorist on July 1, 1989. Alleging permanent back

injury, VanHaaren soon exhausted the $5,000 medical payments

coverage provided under his State Farm automobile insurance

policy, and in March 1991 he submitted a $100,000 claim repre-

senting the full amount of the uninsured motorist coverage under

the State Farm policy. The State Farm policy contained a provi-

sion ("IME clause") which required VanHaaren to submit to an

"examin[ation] by physicians chosen and paid by [State Farm] as

often as [State Farm] reasonably may require."

On April 8, and again on May 2, 1991, State Farm wrote

VanHaaren's counsel requesting confirmation that VanHaaren was

residing in Florida, so that an IME could be conducted in Flori-

da. On May 17, VanHaaren's counsel advised State Farm that

VanHaaren had relocated to North Carolina to take a job at a

summer resort, and suggested that "a realistic approach to the

case would be to allow [State Farm] to obtain an [IME] in the

Ashville, North Carolina area and then to set up an arbitration

or mediation." The State Farm representative responded, noting

that the policy included an arbitration provision. He requested

that VanHaaren's counsel advise State Farm "where [VanHaaren]

will be for a reasonable period of time so I may refer [sic] to

the proper State Farm office to make [IME] arrangements." It is

conceded that VanHaaren's counsel did not respond to the latter

request.

On September 13, VanHaaren brought an action in Maine

Superior Court, which State Farm promptly removed to federal

district court. Counsel to State Farm wrote VanHaaren's counsel

on December 16, requesting confirmation that VanHaaren would

attend an IME scheduled for January 14, 1992, in Portland, Maine.

One week later, VanHaaren's counsel declined to confirm Van-

Haaren's attendance at the IME, noting that he considered the

usual diagnoses of the orthopedist chosen by State Farm too

"conservative," inviting State Farm to propose other orthope-

dists, and inquiring why the IME could not be conducted in

Florida where VanHaaren was again residing. Otherwise, Van-

Haaren's counsel suggested, State Farm "may bring a motion for an

examination in the [district court]." On January 10, 1992, over

VanHaaren's opposition, the presiding magistrate judge granted

State Farm's motion to compel VanHaaren to attend the IME sched-

uled for January 14 in Portland. VanHaaren complied.

In May 1992 the district court granted State Farm's

motion for summary judgment on the ground that VanHaaren's

conduct before and after filing suit constituted a breach of the

3

IME clause, barring recovery under the uninsured motorist provi-

sion in the State Farm policy.

II

DISCUSSION

A. Applicable State Law

We review a grant of summary judgment de novo, employ-

ing the same criteria incumbent upon the district court. Pedraza

v. Shell Oil Co., 942 F.2d 48, 50 (1st Cir. 1991), cert. denied,

112 S. Ct. 993 (1992). Summary judgment is appropriate where the

record, including the pleadings, depositions, answers to inter-

rogatories, admissions on file, and affidavits, viewed in the

light most favorable to the nonmoving party, reveals no genuine

dispute as to any material fact and the moving party is entitled

to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Canal

Ins. Co. v. Benner, F.2d , (1st Cir. 1992) [No. 92-

1360, 1992 U.S. App. LEXIS 30889, at *5 (1st Cir. Nov. 24,

1992)].

Although the parties agree that Maine law informs the

present determination as to the materiality of any fact in

genuine dispute, see Blanchard v. Peerless Ins. Co., 958 F.2d

483, 485 (1st Cir. 1992), the Maine Supreme Judicial Court has

yet to address the pivotal issue presented by this appeal: what

material facts must an insurer establish beyond genuine dispute

to warrant summary judgment against a policy holder who breaches

an IME clause? Absent controlling state court precedent, a

4

federal court sitting in diversity may certify a state law issue

to the state's highest court, or undertake its prediction "when

the course [the] state courts would take is reasonably clear."

Porter v. Nutter, 913 F.2d 37, 41 n.4 (1st Cir. 1990) (quoting

Bi-Rite Enters., Inc. v. Bruce Miner Co., 757 F.2d 440, 443 n.3

(1st Cir. 1985)). See also American Waste & Pollution Control

Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir.

1991); S & R Metals, Inc. v. C. Itoh & Co., 859 F.2d 814, 816

(9th Cir. 1988). The prognostic chore is reasonably straightfor-

ward in the instant case.

State Farm argues that Maine law would follow estab-

lished contract law principles, permitting the insurer to avoid

all liability under its insurance contract where the policy

holder commits an anticipatory breach of a condition precedent to

coverage by "refusing" to submit to an IME, irrespective of any

prejudice to the insurer. In our view, its assessment is less

than prescient.

In Ouellette v. Maine Bonding & Cas. Co., 495 A.2d 1232

(Me. 1985), the Maine Supreme Judicial Court, sitting as the Law

Court, explicitly "abandon[ed] the analysis of a negotiated

contract," under which an insurer's performance would be excused

on the bare showing that the insured breached a condition prece-

dent to coverage by inexcusably delaying notification of the

policy claim for four years. Id. at 1235. Rather, the Law Court

held that the insurer must prove "that the notice provision was

in fact breached, and . . . that the insurer was prejudiced by

5

the insured's delay." Id. (emphasis added). Ouellette brought

Maine law in line with the growing majority of jurisdictions

which acknowledge that a post-occurrence forfeiture of insurance

coverage is rarely to be invoked, absent actual prejudice to the

insurer, because (1) insurance policies are contracts of adhe-

sion, (2) the insured has prepaid the premiums for coverage, and

(3) insurance coverage furthers broader public policy aims. See,

e.g., St. Paul Fire & Marine Ins. Co. v. Petzold, 418 F.2d 303,

305 (1st Cir. 1969) (applying New Hampshire law to "notice of

claim" provision); Johnson Controls, Inc. v. Bowes, 381 Mass.

278, 282-83, 409 N.E.2d 185, 188 (1980) ("notice of claim"

provision); cf. Piro v. Pekin Ins. Co., 514 N.E.2d 1231, 1234

(Ill. App. Ct. 1987) ("Declaring forfeiture of the benefits of

[fire] insurance bought and paid for based solely on events

occurring subsequent to the event of the insured-against loss

should be avoided."). As Maine law plainly requires a showing of

prejudice for "notice of claim" violations, we can discern no

sound reason to anticipate a less stringent requirement for

breach of an IME clause in an uninsured motorist policy. Cf.

Bankers Ins. Co. v. Macias, 475 So.2d 1216, 1217-18 (Fla. 1985)

(breach of "notice of claim" provision raises rebuttable presump-

tion of prejudice to insurer, whereas breach of "cooperation

clause" in policy raises no presumption but requires showing by

6

insurer that breach was material and caused substantial preju-

dice).2

State Farm endeavors to forfend against the portent of

the Ouellette decision on the ground that the "prejudice" issue

was not preserved in the district court. State Farm correctly

points out that VanHaaren neither cited to the Ouellette decision

nor argued to the district court that Maine law would require

proof of prejudice. Although the district court acknowledged the

2VanHaaren contends that the IME clause is unenforceable, as
it violates the public policy enunciated in the Maine uninsured
motorist statute, Me. Rev. Stat. Ann. tit. 24-A, 2902 (1990 &
Supp. 1991), by impermissibly constricting the scope of mandated
uninsured motorist coverage. First, VanHaaren waived this claim
by failing to raise it before the district court. Sandstrom v.

Chemlawn Corp., 904 F.2d 83, 87 (1st Cir. 1990). Second, courts

quite generally have found that reasonable "proof of loss"
obligations serve a legitimate purpose, affording the insurer a
more objective accounting of the insured's injuries or damages.
See McKimm v. Bell, 790 S.W.2d 526, 528 (Tenn. 1990) (and cases

cited therein); cf. Huntt v. State Farm Mut. Auto. Ins. Co., 527

A.2d 1333, 1335 (Md. App. 1987) (noting that no-fault personal
injury protection ("PIP") coverage was never "intended to provide
a PIP claimant with a blank check"). Third, the IME clause is
readily distinguishable from other types of uninsured motorist
policy restrictions invalidated by the Maine Law Court. See,

e.g., Lanzo v. State Farm Mut. Auto. Ins. Co., 524 A.2d 47, 50

(Me. 1987) (statutory term "hit-and-run" does not allow insurer
to restrict uninsured motorist coverage to accidents involving
physical contact). Given the relative ease of compliance with a
"reasonable" IME request, an IME clause does not unduly circum-
scribe uninsured motorist coverage or remove it beyond the
insured's control. Fourth, the Law Court has suggested, quite
clearly, that insurers are entitled to the protection of an IME
at "critical stages" in the uninsured motorist claim process.
See Home Ins. Co. v. Horace Mann Ins. Co., 603 A.2d 860, 861 (Me.

1992). Finally, the principal case upon which VanHaaren relies
is inapposite. Benson v. Nationwide Mut. Ins. Co., 238 S.E.2d

683 (S.C. 1977), turns on the peculiar language of the South
Carolina uninsured motorist insurance statute ("[T]he uninsured
motorist provision shall not require anything not otherwise
herein provided for. . . ."), which disallows all proscriptive
policy provisions not specifically authorized by statute. Id. at

684.

7

significance of Ouellette, it expressly bypassed the issue since

VanHaaren had neither contended that State Farm was required to

show "prejudice" under Maine law, nor argued that prejudice had

not been established. Although loathe to conclude that VanHaaren

waived the "prejudice" issue, we do so in light of the district

court's pellucid determination that VanHaaren had made no claim

that State Farm was either required to demonstrate prejudice or

failed to do so.3 In these circumstances, VanHaaren's failure

to move for reconsideration of the district court order should

not be excused. See Boston Celtics Ltd. Partnership v. Shaw, 908

F.2d 1041, 1045 (1st Cir. 1990); Brown v. Trustees of Boston

Univ., 891 F.2d 337, 357 (1st Cir. 1989), cert. denied, 496 U.S.

937 (1990).

B. Breach of IME Clause

VanHaaren nevertheless contends that State Farm failed

to establish beyond reasonable disputation the other essential

element of its defense that he breached the IME clause by

"refusing" to comply with State Farm's reasonable IME requests.

3The district court opinion could not have been more clear:

The plaintiff, however, does not argue that the court
must find prejudice resulting from his failure to
submit to an IME upon request in order to relieve the
defendant of its obligation to him under the uninsured
motorist provisions of the policy. Nor does he contest
the defendant's assertion that the amount of time and
money spent by State Farm to secure an IME of the
plaintiff constitutes prejudice. He simply argues that
any expenses incurred by State Farm are a result of its
failure to cooperate with him.

8

As a general rule, whether there was substantial

compliance with a condition precedent in an insurance contract is

a question of fact ill-suited to disposition on summary judgment.

See, e.g., Piro, 514 N.E.2d at 1234 (noting that whether the

insured provided necessary information "too late" normally is a

question for the factfinder). Under Maine law, even if the

insurer suffers appreciable prejudice from the breach, the

insured may still quell the insurer's affirmative defense by

proffering a valid excuse or justification for the failure or

refusal to comply. See Ouellette, 495 A.2d at 1234 (noting that

if insured's delay was "unreasonable or unexplained," insurer may

avoid coverage by demonstrating "prejudice"); cf. Hines v. State

Farm Fire & Cas. Co., 815 F.2d 648, 652 (11th Cir. 1987) (holding

that, under Georgia law, asserted justification for failure to

provide tax returns foreclosed summary judgment on issue of

breach); St. Paul, 418 F.2d at 305 (requiring that jury deter-

mine, under New Hampshire law, whether insured's failure to

comply with condition was unexplained, unexcused, unreasonable,

or arbitrary); cf. also Matthias v. Government Employees Ins.

Co., 517 N.Y.S.2d 540, 541 (N.Y. App. Div. 1987) (finding that

insured failed to defeat insurer's defense by showing a justifi-

cation for repeated non-compliance); Pennsylvania Gen. Ins. Co.

v. Becton, 475 A.2d 1032, 1035 (R.I. 1984) (using multi-factor

test, requiring factfinder to weigh length of delay, reasons for

delay, and probability of prejudice to insurer).

9

Even if we were to accord VanHaaren the benefit of

every conceivable doubt, allowing that he may have misperceived

the intent or urgency of State Farm's inquiries on April 8,

May 2, and June 10,4 the ongoing pattern of noncooperation

4IME clauses, and similar provisions, differ from other
types of conditions precedent in that the insured's obligation is
not automatically triggered by the occurrence which forms the
basis for the insurance claim. Rather, the insurer must activate
the contractual obligation by communicating a reasonable IME
request to the insured. Cf. Weber v. General Acci. Fire & Life

Assur. Corp., 10 Ohio App.3d. 305, 307, 462 N.E.2d 422, 424

(1983) ("sworn examination" clause not a "self-executing" condi-
tion precedent, and there can be no noncompliance absent a
"demand" by insurer). State Farm posits that it made three
reasonable IME requests on April 8, May 2, and June 10, 1991, all
prior to the date VanHaaren filed suit. On the other hand,
VanHaaren's attorney characterizes State Farm's pre-litigation
inquiries as exploratory settlement negotiations. Thus, the
asserted excuse for VanHaaren's noncompliance is tantamount to a
claim of mutual miscommunication.
Viewed in isolation from the events which followed, these
initial communications might reasonably be thought sufficiently
indefinite to have excused VanHaaren's failure to cooperate.
Much of the language in the State Farm letters was arguably
precatory (e.g., I "would like your agreement . . ." and "I

request permission . . ."). The IME clause provides that Van-
Haaren must submit to an examination "by physicians chosen" by
State Farm, conceivably suggesting that the insured might reason-
ably reserve assent until such time as a doctor was "chosen" by
State Farm. See Ray v. Blue Alliance Mut. Ins. Co., 594 A.2d

1110, 1111 (Me. 1991) (ambiguous policy language construed
against insurer). Finally, State Farm's initial letters failed
to designate specific or comprehensive IME terms (date, place,
name of physician). See Ferro v. Gebbia, 252 So.2d 545, 546-47

(La. App. 1971) (insurer must notify insured that it has sched-
uled doctor's appointment at specific time and place); cf.

Huggins v. Hartford Ins. Co., 650 F. Supp. 38, 42 (E.D.N.C. 1986)

(requests for oral examination must specify date, place, examin-
er, and not leave it up to plaintiff to get in touch with insur-
er); Saft America, Inc. v. Insurance Co. of North America, 155

Ga. App. 500, 501, 271 S.E.2d 641, 642 (1980) (insurer must
designate terms of oral examination; not sufficient to set forth
agreeable choices for insured, and ask insured to decide; minimum
requirement for valid "request" is identification of examiner);
Weber, 10 Ohio App.3d. at 307, 462 N.E.2d at 424 (defective

"demand" for "sworn exam" contained precatory language and
shifted arrangement of details to insured).

10

unmistakably exceeded the bounds of reasonableness by Decem-

ber 16, 1991, when he flatly rejected State Farm's definitive and

objectively reasonable IME request, and invited State Farm

instead to pursue a judicial remedy which would compel compli-

ance. Even if Maine law permitted an insured to test the "rea-

sonableness" of an IME request prior to compliance without

thereby committing an incurable breach, see Kay v. Aetna Cas. &

Sur. Co., 152 So.2d 198, 199-200 (Fla. App. 1963) (fact that

plaintiff seeks "legal ruling as to whether he was required to

submit to the [IME]" should not constitute breach of policy

condition); cf. Insurance Co. of North America v. Goelz, 4 Ill.

App.3d 862, 863, 282 N.E.2d 15, 16 (1972) (good faith refusal

based on "honest mistake" will not work forfeiture "without first

giving the insured a right to comply"), the insured must act in

good faith in asserting a challenge to the IME request.

VanHaaren's objections to the terms of the December

1991 IME request belie a "good faith" challenge. See Falagian v.

Leader Nat'l Ins. Co., 167 Ga. App. 800, 801, 307 S.E.2d 698, 700

(1983) (reasonableness of IME terms is a jury question, "but

there are instances in which it can be decided as a matter of law

Notwithstanding his protestations of "good faith" misunder-
standing, however, VanHaaren's later suit against State Farm
sealed the breach since it foreseeably deprived State Farm of the
valuable opportunity to assess and settle the claim without the
attendant costs and burdens of litigation. Cf. Falagian v.

Leader Nat'l Ins. Co., 167 Ga. App. 800, 801-02, 307 S.E.2d 698,

700 (1983) (finding refusal to comply where insurer had scheduled
an IME, which the insurer cancelled when the insured's counsel
promised the insurer he would reschedule the IME but instead
filed suit).

11

by the court"). An IME clause is a condition precedent which

imposes a duty of performance on the insured. A contracting

party's insistence, "wilfully or by mistake," on preconditions to

performance not stated in the contract, constitutes a breach by

anticipatory repudiation. See 4 Arthur L. Corbin, Corbin on

Contracts 973, at 910 (1951) ("Such a repudiation is condition-

al in character, it is true; but the condition is a performance

to which the repudiator has no right."); cf. Martell Bros., Inc.

v. Donbury, Inc., 577 A.2d 334, 337 n.1 (Me. 1990) (a "distinct

and unequivocal" repudiation entitles the injured party to treat

the contract as "entirely rescinded," and its obligations under

the contract as discharged); cf. also REA Express v. Interway

Corp., 538 F.2d 953, 955 (2d Cir. 1976) (New York law).

VanHaaren's objection to the final State Farm IME

request on the ground that the selected physician's diagnoses

were too conservative was just such an untenable precondition.

The IME clause required VanHaaren to submit to an "examin[ation]

by physicians chosen" by State Farm as often as State Farm

"reasonably may require." The IME clause would afford the

insurer little protection if the insured were entitled to dictate

the identity of the examining physician. Thus, the IME clause

reasonably cannot be interpreted as affording an insured a veto

power based on physician preference, as distinguished from

reasonable and timely objection to the scheduled location, date,

or time, or to particular risks which the examination might pose

to the health of the insured. See, e.g., Kay, 152 So.2d at 199-

12

200 (insured did not breach IME clause by objecting, on advice of

physicians, to lower GI examination which would aggravate his

physical condition, even though he was later ordered to comply).

The insured's preference for an examining physician more likely

to provide a "favorable" (i.e., gloomier) diagnosis certainly

cannot qualify as a reasonable basis for failing to accommodate

the IME request, unless the clause is to be rendered meaningless.

See, e.g.. Allstate Ins. Co. v. Graham, 541 So.2d 160, 162 (Fla.

App. 1989) (holding "unreasonable," under Florida law, insured's

refusal to submit to IME on counsel's advice that physician was

not sufficiently "independent"); Lockwood v. Porter, 98 N.C. App.

410, 411, 390 S.E.2d 742, 743 (1990) (holding that insurer's

affirmative defense was established as a matter of law where

insured refused to submit to IME "because he did not want to

waste his time with a doctor who was not going to do anything for

him and would report to [the insurer] that nothing was wrong with

him when that was not so").

VanHaaren's complaint with the place for conducting the

IME was objectively unreasonable as well, for at least three

reasons. First, VanHaaren chose Portland, Maine as a convenient

forum for instituting suit against State Farm, which entailed the

reasonable prospect that he would be required to make himself

available in the forum district for court appearances, deposi-

tions, and other reasonably foreseeable examinations relating to

the matter in litigation. Thus, it would be unreasonable to

indulge a presumption that VanHaaren would be inconvenienced by

13

an IME in Maine, especially since State Farm scheduled Van-

Haaren's IME and deposition for the same day, in the same city.

Second, in the letter rejecting State Farm's December 16 IME

request, counsel indicated that VanHaaren might be willing to

come to Maine for an IME if State Farm were to designate an

orthopedist acceptable to him.5 Finally, viewed in the context

of State Farm's earlier expressions of willingness to schedule an

IME wherever VanHaaren was residing, coupled with VanHaaren's

repeated failure to identify his current place of residence,

VanHaaren's objection to an IME in Maine rings hollow.

Nor is VanHaaren saved by his eventual submission to

the court order compelling his attendance at the January 14 IME.

Were it otherwise, IME clauses would be reduced to little more

than invitations to litigate IME requests. As the unreasonable-

ness of VanHaaren's earlier repudiation was beyond dispute,

Falagian, 167 Ga. App. at 801, 307 S.E.2d at 701,6 State Farm's

5The letter stated: "Under all the circumstances I strongly
suggest that you consider the possibility of an independent
medical examination where Mr. VanHaaren is located in Florida
rather than here [Maine] or we agree on a different physician."

(Emphasis added.)

6The theory advanced by our dissenting brother was never
argued by the appellant. Absent any suggestion in the record
below or on appeal, we cannot accept the sua sponte assumption

indulged in the dissent that VanHaaren's counsel somehow may have
exceeded his representational authority in responding to the IME
requests. (Much less would we assume "bad faith" on the part of
counsel. See infra at p. 18.) The court below, unlike those in

the cases cited in the dissent, could not have been expected to
allocate responsibility, as between attorney and client, for the
insured's responses to IME requests. We leave any such alloca-
tion to whatever forum might be invited, by attorney or client,
to undertake it.

14

obligation to cover VanHaaren's claim for the alleged occurrence

was excused upon VanHaaren's unequivocal repudiation.7

III

CONCLUSION

As no reasonable trier of fact could find that Van-

Haaren acted in good faith in refusing to comply with State

Farm's December 16 IME request, and VanHaaren inexplicably

refrained from raising the prejudice issue below, summary judg-

ment for State Farm was proper.8

Affirmed.

7VanHaaren belatedly argues that State Farm waived its right
to substantial compliance with the IME request because it (1)
proceeded to obtain the court order to compel the presumably
"unnecessary" IME, (2) accepted VanHaaren's compliance with the
court order, and (3) made a settlement offer on the basis of the
IME results. As these bootstrapping arguments were neither
presented to the district court, see Brown, 891 F.2d at 357, nor

presented in appellant's opening brief on appeal, see Pignons

S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir.

1983) ("In preparing briefs and arguments, an appellee is enti-
tled to rely on the content of an appellant's [initial] brief for
the scope of the issues appealed . . . ."); see also Fed. R. App.

P. 28(a), (c), we deem them waived.

8Also before us is State Farm's motion to strike various
portions of VanHaaren's reply brief and to impose sanctions on
the ground that the reply brief materially exceeded the scope of
the issues raised in VanHaaren's opening brief. VanHaaren did
raise a bevy of new legal arguments in his reply brief, thereby
frustrating State Farm's right to prepare an appropriate re-
sponse. See Pignons, 701 F.2d at 3; Fed. R. App. P. 28(a), (c).

For example, VanHaaren argued for the first time that State
Farm's IME requests were ineffective because they were delivered
to his attorney. We deliberately bypass these belated arguments
in arriving at our decision, see Frazier v. Bailey, 957 F.2d 920,

932 n.14 (1st Cir. 1992) (issues raised for first time in reply
brief deemed waived), but decline to impose sanctions.

15

16

VanHaaren v. State Farm, et al, No. 92-1667

HIGGINBOTHAM, Circuit Judge, dissenting.

The majority has written a very thoughtful, carefully

reasoned and meticulously cited opinion. But regretfully I must

dissent.

Normally I would agree with the court's conclusion

that:

As no reasonable trier of fact could find that Van-
Haaren acted in good faith in refusing to comply with
State Farm's December 16 IME request, and [that] Van-
Haaren inexplicably refrained from raising the preju-
dice issue below, summary judgment for State Farm was
proper.

In this case, however, there is no evidence in the record to

support the conclusion that VanHaaren failed to act in good faith

in refusing to comply with State Farm's repeated IME requests.

All that the record thus far reveals is that VanHaaren's counsel,

rather than VanHaaren himself, failed to act in good faith.

In Dunbar v. Triangle Lumber and Supply Co., 816 F.2d

126 (3d Cir. 1987), the Court of Appeals for the Third Circuit,

considered the appeal of a plaintiff whose complaint had been

dismissed pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute

and comply with an order of the court. Plaintiff's counsel had

failed to enter an appearance and had failed to attend a pre-

trail conference in blatant disregard of numerous orders from the

district court. The court finally dismissed plaintiff's com-

plaint on the ground that plaintiff had failed to prosecute. The

Court of Appeals reversed the district court and remanded the

16

case for further proceedings. The court reasoned that dismissal

in this context is a "drastic tool" which may appropriately be

invoked after careful analysis of several factors:

(1) the extent of the party's personal responsibility;

(2) the prejudice to the adversary caused by the fail-

ure to meet the scheduling orders and respond to dis-
covery; (3) a history of dilatoriness; (4) whether the

conduct of the party or the attorney was willful or in

bad faith; (5) the effectiveness of sanctions other

than dismissal, which entails an analysis of alterna-

tive sanctions; and (6) the meritoriousness of the

claim or defense.

Dunbar, 816 F.2d at 128 (emphasis in original). In plaintiff's

case, the Third Circuit determined that there was no evidence in

the record that plaintiff "bore some responsibility for the

flagrant actions of her counsel." Id. at 129. Accordingly, the

court concluded that the case should be remanded to permit a

hearing based on all the above factors after notice to plaintiff

and her counsel. Id. As an example to the district court about

the "alternative sanctions", other than the dismissal, which

might be considered, the court of appeals assessed costs person-

ally against plaintiff's counsel. Id.

Similarly in Velazquez-Rivera v. Sea-Land Service,

Inc., 920 F.2d 1072 (1st Cir. 1990), this circuit considered the

appeal of plaintiffs whose case had been dismissed due to coun-

sel's failure to attend pre-trial conferences and comply with

other orders of the district court. Before the district court,

plain-tiffs' counsel, in an extraordinary act of contrition,

"requested that sanctions be imposed against himself as attorney,

but that, the plaintiffs not being at fault, the dismissal of the

17

action be set aside." Velazquez-Rivera, 920 F.2d at 1074. The

district court denied counsel's requests and dismissed the

action. This court reversed the district court and remanded the

case for further proceedings. Id. at 1079. We reasoned that

"dismissal should be employed only if the district court has

determined that it could not fashion an `equally effective but

less drastic remedy.'" Id. at 1076. We also reasoned that it

was significant that the failure to follow the district court's

orders was due to counsel's mistakes rather to any bad faith on

the part of plaintiffs. Id.

Here, thus far the record reveals that VanHaaren's

counsel, rather than VanHaaren himself, acted in bad faith in

refusing State Farm's repeated IME requests. It seems to me a

rather drastic and tragic remedy to dispose adversely of

VanHaaren's claim because of the conduct of his attorney. Of

course, it may very well be that VanHaaren himself knew of the

IME requests, and himself refused to comply with them. If that

is the case, then summary judgment in favor of State Farm would

be appropriate. But, at the very least, the district court ought

to hold a hearing to determine whether VanHaaren bears personal

responsibility for the actions of his counsel. If VanHaaren does

not bear personal responsibility, and if failure to respond to

the IME requests was due simply to dereliction on the part of his

counsel, then the court ought to consider a less drastic remedy

than to dispose adversely of his action. One such remedy,

pursuant to Velazquez and Dunbar might be in the form of sanc-

18

tions imposed or personal costs assessed against VanHaaren's

counsel.

For the foregoing reasons I respectfully dissent from

the judgment of the court.

19