CAVANAGH, J.
(dissenting). At issue in this case is whether a defendant-insurer may disclaim liability as a result of a plaintiff-insured’s failure to timely comply with an uninsured-motorist insurance policy provision requiring notice within 30 days of an accident involving a hit-and-run motor vehicle. I agree with the Court of Appeals that Koski v Allstate Ins Co, 456 Mich 439; 572 NW2d 636 (1998), should control in this case. Specifically, I would hold that an insurer that seeks to relieve itself from responsibility on the ground that its insured did not strictly comply with a contractual notice provision must establish actual prejudice to its position. Because defendant has failed to explain how it was prejudiced by plaintiffs untimely notice as a matter of law, I would affirm the judgment of the Court of Appeals, which affirmed the trial court’s order denying defendant’s motion for summary disposition.
In Koski, this Court considered the analogous situation of whether a defendant-insurer could disclaim liability as a result of a plaintiff-insured’s failure to comply with a notice-of-suit provision in a homeowner’s policy. Specifically, Koski involved an insurance policy that required the insured, as a condition precedent to the insurer’s liability, to “immediately” forward to the insurer any legal papers received concerning any accident or claim. Id. at 441 n 1, 444. This Court explained that “[ojrdinarily, one who sues for performance of a contractual obligation must prove that all contractual conditions prerequisite to performance have been satisfied.” Id. at 444. Nevertheless, this Court unanimously reaffirmed the “well-established principle” of this state that “an insurer who seeks to cut off responsibility on the ground that its insured did not comply *378 with a contract provision requiring notice immediately or within a reasonable time must establish actual prejudice to its position.” Id., citing Weller v Cummins, 330 Mich 286; 47 NW2d 612 (1951), and Wendel v Swanberg, 384 Mich 468; 185 NW2d 348 (1971);[1] see, also, Weller, 330 Mich at 292-293 (explaining that in Kennedy v Dashner, 319 Mich 491; 30 NW2d 46 [1947], this Court applied the above principles in the context of an automobile insurance policy requiring notice of an accident or claim “ ‘as soon as practicable’ ”).
I agree with the Court of Appeals that there is no persuasive reason to conclude that Koski should not apply in this context simply because this case involves a specific period in which notice was required, rather than a provision requiring notice “immediately,” “as soon as practicable,” or within a “reasonable time.” As Koski and other jurisdictions have recognized, a pur *379 pose of requiring notice of an accident is to “ ‘give the insurance company knowledge of the accident so that it can make a timely investigation in order to protect its interests.’ ” Koski, 456 Mich at 444, quoting Weller, 330 Mich at 293; see, also, Brakeman v Potomac Ins Co, 472 Pa 66, 74; 371 A2d 193 (1977); State Auto Mut Ins Co v Youler, 183 W Va 556, 561; 396 SE2d 737 (1990). Because the function of the notice provision is to protect the insurance company from prejudice, it follows that if the insurance company has not been harmed by untimely notice the rationale behind the notice condition in the policy is unsupported, regardless of whether the policy required notice within a specific amount of time or a reasonable time. See Brakeman, 472 Pa at 75.[2]
Accordingly, I agree with those jurisdictions that have concluded that, given the function of the notice provision, there is no persuasive justification for excusing an insurer from its obligations under an insurance policy in the absence of prejudice. See Prince George’s Co v Local Gov’t Ins Trust, 388 Md 162, 183-184; 879 A2d 81 (2005). I would apply that proposition in this context. To strictly enforce notice provisions in the *380 absence of prejudice to the insurer would amount to a forfeiture for the insured and provide a windfall to the insurer by way of a “technical escape-hatch,” contrary to the function of the contract’s notice requirement. Brakeman, 472 Pa at 75, quoting Miller v Marcantel, 221 So 2d 557, 559 (La App, 1969); see, also, Prince George’s Co, 388 Md at 186. Thus, I agree with those authorities that have opined that coverage should not be lost in cases in which there is a “dearth of evidence as to the effect of the late notice . . . .” Youler, 183 W Va at 563 (quotation marks and citation omitted). Accordingly, I would affirm the decision of the Court of Appeals to apply Koski in this context.[3]
Finally, it bears mentioning that I generally agree that clear and unambiguous insurance policies should be applied as written. Rory v Continental Ins Co, 473 Mich 457, 512-513; 703 NW2d 23 (2005) (CAVANAGH, J., dissenting). However, I decline to ignore the unique character of insurance policies, which, although in the form of a contract, are in actuality “a product prepared and packaged by the insurer” without “negotiation or explanation of the scope of the coverage.” Wilkie v Auto-Owners Ins Co, 469 Mich 41, 68-69; 664 NW2d 776 (2003) (CAVANAGH, J., dissenting) (quotation marks and *381 citations omitted).[4] An approach requiring adherence to the parties’ purported “freedom of contract” stems from, in my view, the fiction that the contractual term was truly bargained for and ignores the reality of how insurance policies normally come into existence. Rory, 473 Mich at 514-515 (CAVANAGH, J., dissenting). I believe that the analysis should embrace, rather than discount, this reality. See Brakeman, 472 Pa at 72-73.1 would not turn a blind eye to the manner in which the insurance industry operates and discount the effects of encouraging insurers to include technical escape hatches to preclude coverage at the expense of unwary injured citizens. Rory, 473 Mich at 516 (CAVANAGH, J., dissenting). Accordingly, I respectfully dissent.
Marilyn Kelly and Hathaway, JJ., concurred with Cavanagh, J.

 Notably, Koski’s rule is not an outlier position, as a vast majority of jurisdictions have imposed some form of a prejudice requirement in determining whether to enforce a condition precedent in an insurance contract. See, e.g., Arrowood Indemnity Co v King, 304 Conn 179, 203; 39 A3d 712 (2012) (joining the “overwhelming majority” of jurisdictions that require insurers to establish prejudice); PAJ, Inc v Hanover Ins Co, 243 SW3d 630, 633-634 (Tex, 2008) (noting that most jurisdictions presented with the issue have adopted a “notice-prejudice rule” in some form, consistently with the modem trend); Prince George’s Co v Local Gov’t Ins Trust, 388 Md 162, 182-183; 879 A2d 81 (2005) (citing authorities that indicate that a vast majority of states have adopted a prejudice requirement and noting that 38 states, including Michigan, have adopted a “prejudice rule” whereas only 6 states have maintained a traditional “no prejudice rule”); State Auto Mut Ins Co v Youler, 183 W Va 556, 562; 396 SE2d 737 (1990) (explaining that the “majority of the precedents... do not allow a denial of uninsured or underinsured motorist coverage for delayed notice of the accident to the insurer unless the delay was unreasonable, considering, among other things, whether the insurer was prejudiced, and the insurer bears the burden of proving prejudice”); Ouellette v Maine Bonding & Cas Co, 495 A2d 1232, 1234-1235 (Me, 1985) (following the “modem trend” of requiring an insurer to show that it was prejudiced by an insured’s delay in providing notice in order to escape liability).

 Notably, I am not alone in reaching this conclusion. Other jurisdictions have mandated a showing of prejudice for similar provisions requiring notice or other action within a specific time, such as 30 days, to be enforceable. See, e.g., Washington Ins Guaranty Ass’n v Hill, 19 Wash App 195, 196-197; 574 P2d 405 (1978) (applying a prejudice requirement to an insurance policy requiring a statement under oath within 30 days, and noting precedent that applied a prejudice requirement to an insurance policy requiring notice of an accident within 60 days); Colangelo v Bankers & Shippers Ins Co of New York, 185 NJ Super 205, 210-211; 447 A2d 1356 (1982) (rejecting a defendant’s claim that the insured’s failure to file a statement under oath within the time provided in an insurance policy prohibited coverage as a matter of law, explaining that the question to be resolved was whether the insurer established that it had suffered appreciable prejudice).

 The majority spends a considerable amount of its analysis explaining why it believes the Court of Appeals erred by disregarding the majority’s peremptory order in Jackson v State Farm Mut Auto Ins Co, 472 Mich 942 (2005), and failing to consider its “limited authority as an intermediate appellate court.” Ante at 371. Regardless of whether Jackson is or is not binding precedent, I continue to disagree with the majority’s decision in Jackson to reverse for the reasons stated by the Court of Appeals dissent — a dissent that, notably, did not even address, let alone “distinguish,” Koski. Further, I question whether it is necessary to determine if Jackson is controlling, given the majority’s conclusion that the Court of Appeals erred by failing to abide by the majority opinion in Rory v Continental Ins Co, 473 Mich 457; 703 NW2d 23 (2005).

 As Justice Levin observed, in the typical insurance agreement
“[t]here is no meeting of the minds except regarding the broad outlines of the transaction, the insurer’s desire to sell a policy and the insured’s desire to buy a policy of insurance for a designated price and period of insurance to cover loss arising from particular perils.... The details (definitions, exceptions, exclusions, conditions) are generally not discussed and rarely negotiated.
“The policyholder can, of course, be said to have agreed to whatever the policy says — in that sense his mind met with that of the insurer. Such an analysis may not violate the letter of the concept that a written contract expresses the substance of a meeting of minds, but it does violate the spirit of that concept.
“To be sure, contract law principles are not confined by the concept of a ‘meeting of the minds’. Nevertheless, a point is reached when the label ‘contract’ ceases to fully and accurately describe the relationship of the parties and the nature of the transaction between insurer and insured.” [Rory, 473 Mich at 514 n 1 (Cavanagh, J., dissenting), quoting Lotoszinski v State Farm Mut Auto Ins Co, 417 Mich 1, 14 n 1; 331 NW2d 467 (1982) (Levin, J., dissenting) (alteration in original).]