REA EXPRESS, INC., Plaintiff-Appellant, Cross-Appellee,

v.

INTERWAY CORPORATION and Integrated Container Service, Inc., Defendants-Appellees, Cross-Appellant.

Nos. 1140, 1249, Dockets 76–7099, 76–7100.

United States Court of Appeals, Second Circuit.

Argued June 10, 1976.

Decided July 12, 1976.

Franklin Poul, Philadelphia, Pa. (Wolf, Block, Schorr & Solis-Cohen, Judith R. Cohn, Philadelphia, Pa., Whitman & Ransom, Donald L. Wallace, New York City, of counsel), for plaintiff-appellant and cross-appellee.

Stephen A. Weiner, New York City (Winthrop, Stimson, Putnam & Roberts, John F. Pritchard, Robert J. Sussman, New York City, of counsel), for defendants-appellees and cross-appellant.

Before FRIENDLY, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

**VAN GRAAFEILAND, Circuit Judge:**

■ The principal question in this case is whether the holder of preferred stock with an option to convert it into common stock, to be registered with the SEC at the request of the convertor, must tender his stock for conversion before he can demand registration of the common stock to be received in exchange. Under the facts of this case, we hold that he need not and reverse the contrary holding of the District Court.

On November 1, 1968, appellant, REA Express, Inc. (REA), sold 51% of the stock of a wholly owned subsidiary, Realco, to Integrated Container Service, Inc., a predecessor of appellee, Interway Corporation. As part of the agreement, REA was given an option to exchange any part of the remaining 49% for preferred stock of Interway. This preferred stock was a new class, unregistered with the SEC and therefore not saleable to the public, and was intended to be issued only to REA. REA had the right, however, to convert the preferred shares into common shares, and Interway agreed to use its best efforts to register the common shares into which the preferred shares were convertible. The pertinent portion of the agreement between the parties read as follows:

> [Interway] agrees that, at any time and from time to time following an acceptance by REA of all or any part of your additional offer or following the written notice of REA of intent to accept all or any part of such offer on or after the time the registration statement hereinafter referred to becomes effective, upon the written request of REA, [Interway] will, at its expense . . . use its best efforts to register not less than the number of shares of [Interway] Common Stock (to be received by REA on conversion of the Preferred Stock) so requested to be registered under the Securities Act of 1933. . . .

Shortly after the execution of this agreement, Interway filed a registration statement for a public offering of some of its common stock. In connection therewith, REA exercised its option to exchange 13% of the outstanding Realco stock for Interway preferred, "contingent upon, and effective at the time of, the effectiveness of the Underwriting Agreement" for the proposed public offering. At the same time, REA requested Interway to use its best efforts to register sufficient common stock to permit conversion of the preferred stock which REA would receive on the exchange. The registration was completed on March 6, 1969, and the conversion of preferred took place on March 12, 1969.

Later in 1969, REA tendered Interway an additional block of its Realco shares, with the intention of converting the preferred which it would receive into registered common and then offering the latter for public sale. Because of Interway's reluctance to proceed in this fashion, a new agreement was entered into whereby REA conveyed its remaining Realco stock to Interway for $4,714,290 and 143,673 shares of Interway preferred. REA's conversion-registration rights under the original agreement remained in effect, except that they could not be exercised before December 1, 1969.

On June 14, 1971, REA requested Interway to register 158,041 shares of common stock, so that REA's preferred stock could be converted into the registered shares. In reply, Interway wrote REA in part as follows:

> (1) Interway's stock records indicate that its outstanding convertible preferred issued to REA for the acquisition of a portion of REALCO is currently held in the names of Carr & Co. (79,020½ shares) and Kugler & Co. (79,020½ shares). The written consent of these holders to your request for registration of the common shares into which the preferred is convertible is necessary.
>
> (2) The convertible preferred must be converted into common shares before further efforts can proceed to register the common stock. If you will tender the preferred certificates to this office, Interway will issue you certificates for the common shares.

Throughout the ensuing negotiations which have culminated in this litigation,

Interway has never retreated from its position that the above quoted "conditions precedent" had to be complied with before registration would be sought. If Interway was correct in its position, REA had to either redeem the pledged stock so that it could be tendered or had to induce the pledgee to relinquish unregistered preferred stock in exchange for unregistered common.[1] If Interway was wrong, REA had a valid claim against it for anticipatory breach of contract. We believe that Interway was wrong.

Interway had promised that, at the written request of REA, it would use its best efforts to register "not less than the number of shares to be received by REA on conversion". If the parties were referring in this clause to specific shares of common stock already held by REA at the time of its demand for registration, it is unlikely that they would have used the phrase "not less than the number of shares". Moreover, if conversion was to precede registration, the parties would not have cast the transaction in the future tense, as they did with the phrase "to be received by REA on conversion". The interpretation urged by Interway would require that REA give up the greater security of unregistered preferred stock, with a liquidation value of $100 per share, in exchange for unregistered common stock, having no liquidation value, with no assurance that registration of the common stock would follow. That this is not what the parties intended is well demonstrated by the procedure followed when the 13% block of Realco stock was exchanged. In that transaction, REA did not tender its preferred stock for conversion until after the registration of the common stock had been completed.

It may well be, as the District Court held, that conversion of Interway's preferred stock could only be effectuated by a holder of record, in this case the pledgee of REA's shares. However, it does not follow that conversion must precede a request for regis-

tration. Conversion rights are spelled out in the stock certificates; registration rights in the contract between the parties. REA had the contractual right to demand that registration efforts proceed so that, thereafter, it could make appropriate arrangements with its pledgee for conversion.

Under New York law, insistence upon terms which are not contained in a contract constitutes an anticipatory repudiation thereof. *Neal-Cooper Grain Co. v. Texas Gulf Sulphur Co.,* 508 F.2d 283, 290 (7th Cir. 1974); *Wester v. Casein Co. of America,* 206 N.Y. 506, 100 N.E. 488 (1912). Interway's conduct clearly falls within the ambit of this rule. We find no merit in its contention that REA agreed to a modification of the contract under New York General Obligations Law § 5–1103 by agreeing to secure the consent of its pledgee to the registration and conversion of the pledged stock. While stating that it would seek to obtain such consent, REA steadfastly maintained that it was not required to do so under the terms of the contract. There was no relinquishment of REA's contractual rights.

In the judgment appealed from, Interway was awarded $127,472 on its counterclaim for breach of certain warranties concerning REA's financial position. The District Court, in the exercise of discretion, declined to grant prejudgment interest on this award, and Interway has appealed from such denial. Counsel for REA concedes that under New York C.P.L.R. § 5001 Interway was entitled to prejudgment interest as a matter of right, disputing only the date from which interest should start to run. The matter must therefore be remanded for an appropriate computation and award of interest.

On the appeal by REA, the judgment dismissing its complaint is reversed and the matter is remanded to the District Court for further proceedings consistent with this opinion. On the appeal by Interway, the judgment is reversed and the matter is

---

1. Although there were originally two pledgees, the stock sold by one of them had been redeemed by REA.

remanded to the District Court for computation and award of prejudgment interest. Costs of the appeal to appellant REA.