USCA1 Opinion

 

 March 5, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1667 DENNIS VANHAAREN, Plaintiff, Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. David M. Cohen, U.S. Magistrate Judge] _____________________ ____________________ Before Selya, Circuit Judge, _____________ Higginbotham,* Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Francis M. Jackson for appellant. __________________ Michael S. Wilson with whom Louise K. Thomas and Pierce, Atwood, __________________ ________________ _______________ Scribner, Allen, Smith & Lancaster were on brief for appellee. __________________________________ ____________________ March 5, 1993 ____________________ CYR, Circuit Judge. The district court determined that CYR, Circuit Judge. _____________ plaintiff Dennis VanHaaren had forfeited coverage under the ____________________ *Of the Third Circuit, sitting by designation. uninsured motorist policy issued by defendant State Farm Mutual Automobile Insurance Company ("State Farm") by not complying with State Farm's requests that he submit to an independent medical examination ("IME"). The district court granted summary judgment in favor of State Farm, and VanHaaren appealed. We affirm. I I BACKGROUND BACKGROUND __________ VanHaaren was involved in an automobile collision with an uninsured motorist on July 1, 1989. Alleging permanent back injury, VanHaaren soon exhausted the $5,000 medical payments coverage provided under his State Farm automobile insurance policy, and in March 1991 he submitted a $100,000 claim repre- senting the full amount of the uninsured motorist coverage under the State Farm policy. The State Farm policy contained a provi- sion ("IME clause") which required VanHaaren to submit to an "examin[ation] by physicians chosen and paid by [State Farm] as often as [State Farm] reasonably may require." On April 8, and again on May 2, 1991, State Farm wrote VanHaaren's counsel requesting confirmation that VanHaaren was residing in Florida, so that an IME could be conducted in Flori- da. On May 17, VanHaaren's counsel advised State Farm that VanHaaren had relocated to North Carolina to take a job at a summer resort, and suggested that "a realistic approach to the case would be to allow [State Farm] to obtain an [IME] in the Ashville, North Carolina area and then to set up an arbitration or mediation." The State Farm representative responded, noting that the policy included an arbitration provision. He requested that VanHaaren's counsel advise State Farm "where [VanHaaren] will be for a reasonable period of time so I may refer [sic] to the proper State Farm office to make [IME] arrangements." It is conceded that VanHaaren's counsel did not respond to the latter request. On September 13, VanHaaren brought an action in Maine Superior Court, which State Farm promptly removed to federal district court. Counsel to State Farm wrote VanHaaren's counsel on December 16, requesting confirmation that VanHaaren would attend an IME scheduled for January 14, 1992, in Portland, Maine. One week later, VanHaaren's counsel declined to confirm Van- Haaren's attendance at the IME, noting that he considered the usual diagnoses of the orthopedist chosen by State Farm too "conservative," inviting State Farm to propose other orthope- dists, and inquiring why the IME could not be conducted in Florida where VanHaaren was again residing. Otherwise, Van- Haaren's counsel suggested, State Farm "may bring a motion for an examination in the [district court]." On January 10, 1992, over VanHaaren's opposition, the presiding magistrate judge granted State Farm's motion to compel VanHaaren to attend the IME sched- uled for January 14 in Portland. VanHaaren complied. In May 1992 the district court granted State Farm's motion for summary judgment on the ground that VanHaaren's conduct before and after filing suit constituted a breach of the 3 IME clause, barring recovery under the uninsured motorist provi- sion in the State Farm policy. II II DISCUSSION DISCUSSION __________ A. Applicable State Law A. Applicable State Law ____________________ We review a grant of summary judgment de novo, employ- __ ____ ing the same criteria incumbent upon the district court. Pedraza _______ v. Shell Oil Co., 942 F.2d 48, 50 (1st Cir. 1991), cert. denied, ______________ ____ ______ 112 S. Ct. 993 (1992). Summary judgment is appropriate where the record, including the pleadings, depositions, answers to inter- rogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Canal ___ _____ Ins. Co. v. Benner, ___ F.2d ___, ___ (1st Cir. 1992) [No. 92- ________ ______ 1360, 1992 U.S. App. LEXIS 30889, at *5 (1st Cir. Nov. 24, 1992)]. Although the parties agree that Maine law informs the present determination as to the materiality of any fact in ___________ genuine dispute, see Blanchard v. Peerless Ins. Co., 958 F.2d ___ _________ __________________ 483, 485 (1st Cir. 1992), the Maine Supreme Judicial Court has yet to address the pivotal issue presented by this appeal: what material facts must an insurer establish beyond genuine dispute to warrant summary judgment against a policy holder who breaches an IME clause? Absent controlling state court precedent, a 4 federal court sitting in diversity may certify a state law issue to the state's highest court, or undertake its prediction "when the course [the] state courts would take is reasonably clear." Porter v. Nutter, 913 F.2d 37, 41 n.4 (1st Cir. 1990) (quoting ______ ______ Bi-Rite Enters., Inc. v. Bruce Miner Co., 757 F.2d 440, 443 n.3 _____________________ _______________ (1st Cir. 1985)). See also American Waste & Pollution Control ___ ____ ___________________________________ Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir. ___ _____________________ 1991); S & R Metals, Inc. v. C. Itoh & Co., 859 F.2d 814, 816 ___________________ ______________ (9th Cir. 1988). The prognostic chore is reasonably straightfor- ward in the instant case. State Farm argues that Maine law would follow estab- lished contract law principles, permitting the insurer to avoid all liability under its insurance contract where the policy holder commits an anticipatory breach of a condition precedent to coverage by "refusing" to submit to an IME, irrespective of any prejudice to the insurer. In our view, its assessment is less than prescient. In Ouellette v. Maine Bonding & Cas. Co., 495 A.2d 1232 _________ ________________________ (Me. 1985), the Maine Supreme Judicial Court, sitting as the Law Court, explicitly "abandon[ed] the analysis of a negotiated contract," under which an insurer's performance would be excused on the bare showing that the insured breached a condition prece- dent to coverage by inexcusably delaying notification of the policy claim for four years. Id. at 1235. Rather, the Law Court ___ held that the insurer must prove "that the notice provision was in fact breached, and . . . that the insurer was prejudiced by ___ ____ ___ _______ ___ __________ __ 5 the insured's delay." Id. (emphasis added). Ouellette brought ___ _________ _____ ___ _________ Maine law in line with the growing majority of jurisdictions which acknowledge that a post-occurrence forfeiture of insurance coverage is rarely to be invoked, absent actual prejudice to the insurer, because (1) insurance policies are contracts of adhe- sion, (2) the insured has prepaid the premiums for coverage, and (3) insurance coverage furthers broader public policy aims. See, ___ e.g., St. Paul Fire & Marine Ins. Co. v. Petzold, 418 F.2d 303, ____ ________________________________ _______ 305 (1st Cir. 1969) (applying New Hampshire law to "notice of claim" provision); Johnson Controls, Inc. v. Bowes, 381 Mass. _______________________ _____ 278, 282-83, 409 N.E.2d 185, 188 (1980) ("notice of claim" provision); cf. Piro v. Pekin Ins. Co., 514 N.E.2d 1231, 1234 ___ ____ _______________ (Ill. App. Ct. 1987) ("Declaring forfeiture of the benefits of [fire] insurance bought and paid for based solely on events occurring subsequent to the event of the insured-against loss should be avoided."). As Maine law plainly requires a showing of prejudice for "notice of claim" violations, we can discern no sound reason to anticipate a less stringent requirement for breach of an IME clause in an uninsured motorist policy. Cf. ___ Bankers Ins. Co. v. Macias, 475 So.2d 1216, 1217-18 (Fla. 1985) ________________ ______ (breach of "notice of claim" provision raises rebuttable presump- tion of prejudice to insurer, whereas breach of "cooperation clause" in policy raises no presumption but requires showing by 6 insurer that breach was material and caused substantial preju- dice).2 State Farm endeavors to forfend against the portent of the Ouellette decision on the ground that the "prejudice" issue _________ was not preserved in the district court. State Farm correctly points out that VanHaaren neither cited to the Ouellette decision _________ nor argued to the district court that Maine law would require proof of prejudice. Although the district court acknowledged the ____________________ 2VanHaaren contends that the IME clause is unenforceable, as it violates the public policy enunciated in the Maine uninsured motorist statute, Me. Rev. Stat. Ann. tit. 24-A, 2902 (1990 & Supp. 1991), by impermissibly constricting the scope of mandated uninsured motorist coverage. First, VanHaaren waived this claim by failing to raise it before the district court. Sandstrom v. _________ Chemlawn Corp., 904 F.2d 83, 87 (1st Cir. 1990). Second, courts ______________ quite generally have found that reasonable "proof of loss" obligations serve a legitimate purpose, affording the insurer a more objective accounting of the insured's injuries or damages. See McKimm v. Bell, 790 S.W.2d 526, 528 (Tenn. 1990) (and cases ___ ______ ____ cited therein); cf. Huntt v. State Farm Mut. Auto. Ins. Co., 527 ___ _____ ______________________________ A.2d 1333, 1335 (Md. App. 1987) (noting that no-fault personal injury protection ("PIP") coverage was never "intended to provide a PIP claimant with a blank check"). Third, the IME clause is readily distinguishable from other types of uninsured motorist policy restrictions invalidated by the Maine Law Court. See, ___ e.g., Lanzo v. State Farm Mut. Auto. Ins. Co., 524 A.2d 47, 50 ____ _____ _______________________________ (Me. 1987) (statutory term "hit-and-run" does not allow insurer to restrict uninsured motorist coverage to accidents involving physical contact). Given the relative ease of compliance with a "reasonable" IME request, an IME clause does not unduly circum- scribe uninsured motorist coverage or remove it beyond the insured's control. Fourth, the Law Court has suggested, quite clearly, that insurers are entitled to the protection of an IME at "critical stages" in the uninsured motorist claim process. See Home Ins. Co. v. Horace Mann Ins. Co., 603 A.2d 860, 861 (Me. ___ _____________ ____________________ 1992). Finally, the principal case upon which VanHaaren relies is inapposite. Benson v. Nationwide Mut. Ins. Co., 238 S.E.2d ______ _________________________ 683 (S.C. 1977), turns on the peculiar language of the South Carolina uninsured motorist insurance statute ("[T]he uninsured motorist provision shall not require anything not otherwise herein provided for. . . ."), which disallows all proscriptive policy provisions not specifically authorized by statute. Id. at ___ 684. 7 significance of Ouellette, it expressly bypassed the issue since _________ VanHaaren had neither contended that State Farm was required to show "prejudice" under Maine law, nor argued that prejudice had not been established. Although loathe to conclude that VanHaaren waived the "prejudice" issue, we do so in light of the district court's pellucid determination that VanHaaren had made no claim that State Farm was either required to demonstrate prejudice or failed to do so.3 In these circumstances, VanHaaren's failure to move for reconsideration of the district court order should not be excused. See Boston Celtics Ltd. Partnership v. Shaw, 908 ___ _______________________________ ____ F.2d 1041, 1045 (1st Cir. 1990); Brown v. Trustees of Boston _____ ___________________ Univ., 891 F.2d 337, 357 (1st Cir. 1989), cert. denied, 496 U.S. _____ ____ ______ 937 (1990). B. Breach of IME Clause B. Breach of IME Clause ____________________ VanHaaren nevertheless contends that State Farm failed to establish beyond reasonable disputation the other essential element of its defense that he breached the IME clause by "refusing" to comply with State Farm's reasonable IME requests. ____________________ 3The district court opinion could not have been more clear: The plaintiff, however, does not argue that the court must find prejudice resulting from his failure to submit to an IME upon request in order to relieve the defendant of its obligation to him under the uninsured motorist provisions of the policy. Nor does he contest the defendant's assertion that the amount of time and money spent by State Farm to secure an IME of the plaintiff constitutes prejudice. He simply argues that any expenses incurred by State Farm are a result of its failure to cooperate with him. 8 As a general rule, whether there was substantial compliance with a condition precedent in an insurance contract is a question of fact ill-suited to disposition on summary judgment. See, e.g., Piro, 514 N.E.2d at 1234 (noting that whether the ___ ____ ____ insured provided necessary information "too late" normally is a question for the factfinder). Under Maine law, even if the insurer suffers appreciable prejudice from the breach, the insured may still quell the insurer's affirmative defense by proffering a valid excuse or justification for the failure or refusal to comply. See Ouellette, 495 A.2d at 1234 (noting that ___ _________ if insured's delay was "unreasonable or unexplained," insurer may avoid coverage by demonstrating "prejudice"); cf. Hines v. State ___ _____ _____ Farm Fire & Cas. Co., 815 F.2d 648, 652 (11th Cir. 1987) (holding ____________________ that, under Georgia law, asserted justification for failure to provide tax returns foreclosed summary judgment on issue of breach); St. Paul, 418 F.2d at 305 (requiring that jury deter- ________ mine, under New Hampshire law, whether insured's failure to comply with condition was unexplained, unexcused, unreasonable, or arbitrary); cf. also Matthias v. Government Employees Ins. __ ____ ________ __________________________ Co., 517 N.Y.S.2d 540, 541 (N.Y. App. Div. 1987) (finding that ___ insured failed to defeat insurer's defense by showing a justifi- cation for repeated non-compliance); Pennsylvania Gen. Ins. Co. ___________________________ v. Becton, 475 A.2d 1032, 1035 (R.I. 1984) (using multi-factor ______ test, requiring factfinder to weigh length of delay, reasons for ______ __ _____ _______ ___ delay, and probability of prejudice to insurer). _____ 9 Even if we were to accord VanHaaren the benefit of every conceivable doubt, allowing that he may have misperceived the intent or urgency of State Farm's inquiries on April 8, May 2, and June 10,4 the ongoing pattern of noncooperation ____________________ 4IME clauses, and similar provisions, differ from other types of conditions precedent in that the insured's obligation is not automatically triggered by the occurrence which forms the basis for the insurance claim. Rather, the insurer must activate the contractual obligation by communicating a reasonable IME request to the insured. Cf. Weber v. General Acci. Fire & Life ___ _____ __________________________ Assur. Corp., 10 Ohio App.3d. 305, 307, 462 N.E.2d 422, 424 _____________ (1983) ("sworn examination" clause not a "self-executing" condi- tion precedent, and there can be no noncompliance absent a "demand" by insurer). State Farm posits that it made three reasonable IME requests on April 8, May 2, and June 10, 1991, all prior to the date VanHaaren filed suit. On the other hand, VanHaaren's attorney characterizes State Farm's pre-litigation inquiries as exploratory settlement negotiations. Thus, the asserted excuse for VanHaaren's noncompliance is tantamount to a claim of mutual miscommunication. Viewed in isolation from the events which followed, these initial communications might reasonably be thought sufficiently indefinite to have excused VanHaaren's failure to cooperate. Much of the language in the State Farm letters was arguably precatory (e.g., I "would like your agreement . . ." and "I ____ request permission . . ."). The IME clause provides that Van- Haaren must submit to an examination "by physicians chosen" by State Farm, conceivably suggesting that the insured might reason- ably reserve assent until such time as a doctor was "chosen" by State Farm. See Ray v. Blue Alliance Mut. Ins. Co., 594 A.2d ___ ___ ____________________________ 1110, 1111 (Me. 1991) (ambiguous policy language construed against insurer). Finally, State Farm's initial letters failed to designate specific or comprehensive IME terms (date, place, name of physician). See Ferro v. Gebbia, 252 So.2d 545, 546-47 ___ _____ ______ (La. App. 1971) (insurer must notify insured that it has sched- uled doctor's appointment at specific time and place); cf. ___ Huggins v. Hartford Ins. Co., 650 F. Supp. 38, 42 (E.D.N.C. 1986) _______ _________________ (requests for oral examination must specify date, place, examin- er, and not leave it up to plaintiff to get in touch with insur- er); Saft America, Inc. v. Insurance Co. of North America, 155 __________________ _______________________________ Ga. App. 500, 501, 271 S.E.2d 641, 642 (1980) (insurer must designate terms of oral examination; not sufficient to set forth agreeable choices for insured, and ask insured to decide; minimum requirement for valid "request" is identification of examiner); Weber, 10 Ohio App.3d. at 307, 462 N.E.2d at 424 (defective _____ "demand" for "sworn exam" contained precatory language and shifted arrangement of details to insured). 10 unmistakably exceeded the bounds of reasonableness by Decem- ber 16, 1991, when he flatly rejected State Farm's definitive and objectively reasonable IME request, and invited State Farm instead to pursue a judicial remedy which would compel compli- ance. Even if Maine law permitted an insured to test the "rea- sonableness" of an IME request prior to compliance without thereby committing an incurable breach, see Kay v. Aetna Cas. & ___ ___ _____________ Sur. Co., 152 So.2d 198, 199-200 (Fla. App. 1963) (fact that _________ plaintiff seeks "legal ruling as to whether he was required to submit to the [IME]" should not constitute breach of policy condition); cf. Insurance Co. of North America v. Goelz, 4 Ill. ___ _______________________________ _____ App.3d 862, 863, 282 N.E.2d 15, 16 (1972) (good faith refusal based on "honest mistake" will not work forfeiture "without first giving the insured a right to comply"), the insured must act in good faith in asserting a challenge to the IME request. VanHaaren's objections to the terms of the December 1991 IME request belie a "good faith" challenge. See Falagian v. ___ ________ Leader Nat'l Ins. Co., 167 Ga. App. 800, 801, 307 S.E.2d 698, 700 _____________________ (1983) (reasonableness of IME terms is a jury question, "but there are instances in which it can be decided as a matter of law ____________________ Notwithstanding his protestations of "good faith" misunder- standing, however, VanHaaren's later suit against State Farm sealed the breach since it foreseeably deprived State Farm of the valuable opportunity to assess and settle the claim without the attendant costs and burdens of litigation. Cf. Falagian v. ___ ________ Leader Nat'l Ins. Co., 167 Ga. App. 800, 801-02, 307 S.E.2d 698, _____________________ 700 (1983) (finding refusal to comply where insurer had scheduled an IME, which the insurer cancelled when the insured's counsel promised the insurer he would reschedule the IME but instead filed suit). 11 by the court"). An IME clause is a condition precedent which imposes a duty of performance on the insured. A contracting party's insistence, "wilfully or by mistake," on preconditions to performance not stated in the contract, constitutes a breach by anticipatory repudiation. See 4 Arthur L. Corbin, Corbin on ___ __________ Contracts 973, at 910 (1951) ("Such a repudiation is condition- _________ al in character, it is true; but the condition is a performance to which the repudiator has no right."); cf. Martell Bros., Inc. ___ ___________________ v. Donbury, Inc., 577 A.2d 334, 337 n.1 (Me. 1990) (a "distinct ______________ and unequivocal" repudiation entitles the injured party to treat the contract as "entirely rescinded," and its obligations under the contract as discharged); cf. also REA Express v. Interway ___ ____ ____________ ________ Corp., 538 F.2d 953, 955 (2d Cir. 1976) (New York law). _____ VanHaaren's objection to the final State Farm IME request on the ground that the selected physician's diagnoses were too conservative was just such an untenable precondition. The IME clause required VanHaaren to submit to an "examin[ation] by physicians chosen" by State Farm as often as State Farm "reasonably may require." The IME clause would afford the insurer little protection if the insured were entitled to dictate the identity of the examining physician. Thus, the IME clause reasonably cannot be interpreted as affording an insured a veto power based on physician preference, as distinguished from reasonable and timely objection to the scheduled location, date, or time, or to particular risks which the examination might pose to the health of the insured. See, e.g., Kay, 152 So.2d at 199- ___ ____ ___ 12 200 (insured did not breach IME clause by objecting, on advice of physicians, to lower GI examination which would aggravate his physical condition, even though he was later ordered to comply). The insured's preference for an examining physician more likely to provide a "favorable" (i.e., gloomier) diagnosis certainly ____ cannot qualify as a reasonable basis for failing to accommodate the IME request, unless the clause is to be rendered meaningless. See, e.g.. Allstate Ins. Co. v. Graham, 541 So.2d 160, 162 (Fla. ___ ____ _________________ ______ App. 1989) (holding "unreasonable," under Florida law, insured's refusal to submit to IME on counsel's advice that physician was not sufficiently "independent"); Lockwood v. Porter, 98 N.C. App. ________ ______ 410, 411, 390 S.E.2d 742, 743 (1990) (holding that insurer's affirmative defense was established as a matter of law where insured refused to submit to IME "because he did not want to waste his time with a doctor who was not going to do anything for him and would report to [the insurer] that nothing was wrong with him when that was not so"). VanHaaren's complaint with the place for conducting the IME was objectively unreasonable as well, for at least three reasons. First, VanHaaren chose Portland, Maine as a convenient forum for instituting suit against State Farm, which entailed the reasonable prospect that he would be required to make himself available in the forum district for court appearances, deposi- tions, and other reasonably foreseeable examinations relating to the matter in litigation. Thus, it would be unreasonable to indulge a presumption that VanHaaren would be inconvenienced by ___________ 13 an IME in Maine, especially since State Farm scheduled Van- Haaren's IME and deposition for the same day, in the same city. ____ ___ ____ ____ Second, in the letter rejecting State Farm's December 16 IME request, counsel indicated that VanHaaren might be willing to come to Maine for an IME if State Farm were to designate an orthopedist acceptable to him.5 Finally, viewed in the context of State Farm's earlier expressions of willingness to schedule an IME wherever VanHaaren was residing, coupled with VanHaaren's ________ _________ ___ ________ repeated failure to identify his current place of residence, VanHaaren's objection to an IME in Maine rings hollow. Nor is VanHaaren saved by his eventual submission to the court order compelling his attendance at the January 14 IME. _____ _____ Were it otherwise, IME clauses would be reduced to little more than invitations to litigate IME requests. As the unreasonable- ness of VanHaaren's earlier repudiation was beyond dispute, Falagian, 167 Ga. App. at 801, 307 S.E.2d at 701,6 State Farm's ________ ____________________ 5The letter stated: "Under all the circumstances I strongly suggest that you consider the possibility of an independent medical examination where Mr. VanHaaren is located in Florida rather than here [Maine] or we agree on a different physician." __ __ _____ __ _ _________ _________ (Emphasis added.) 6The theory advanced by our dissenting brother was never argued by the appellant. Absent any suggestion in the record below or on appeal, we cannot accept the sua sponte assumption ___ ______ indulged in the dissent that VanHaaren's counsel somehow may have exceeded his representational authority in responding to the IME requests. (Much less would we assume "bad faith" on the part of counsel. See infra at p. 18.) The court below, unlike those in ___ _____ the cases cited in the dissent, could not have been expected to allocate responsibility, as between attorney and client, for the insured's responses to IME requests. We leave any such alloca- tion to whatever forum might be invited, by attorney or client, to undertake it. 14 obligation to cover VanHaaren's claim for the alleged occurrence was excused upon VanHaaren's unequivocal repudiation.7 III III CONCLUSION CONCLUSION __________ As no reasonable trier of fact could find that Van- Haaren acted in good faith in refusing to comply with State Farm's December 16 IME request, and VanHaaren inexplicably refrained from raising the prejudice issue below, summary judg- ment for State Farm was proper.8 Affirmed. Affirmed. ________ ____________________ 7VanHaaren belatedly argues that State Farm waived its right to substantial compliance with the IME request because it (1) proceeded to obtain the court order to compel the presumably "unnecessary" IME, (2) accepted VanHaaren's compliance with the court order, and (3) made a settlement offer on the basis of the IME results. As these bootstrapping arguments were neither presented to the district court, see Brown, 891 F.2d at 357, nor ___ _____ presented in appellant's opening brief on appeal, see Pignons ___ _______ S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. __________________ ______________ 1983) ("In preparing briefs and arguments, an appellee is enti- tled to rely on the content of an appellant's [initial] brief for the scope of the issues appealed . . . ."); see also Fed. R. App. ___ ____ P. 28(a), (c), we deem them waived. 8Also before us is State Farm's motion to strike various portions of VanHaaren's reply brief and to impose sanctions on the ground that the reply brief materially exceeded the scope of the issues raised in VanHaaren's opening brief. VanHaaren did raise a bevy of new legal arguments in his reply brief, thereby frustrating State Farm's right to prepare an appropriate re- sponse. See Pignons, 701 F.2d at 3; Fed. R. App. P. 28(a), (c). ___ _______ For example, VanHaaren argued for the first time that State Farm's IME requests were ineffective because they were delivered to his attorney. We deliberately bypass these belated arguments in arriving at our decision, see Frazier v. Bailey, 957 F.2d 920, ___ _______ ______ 932 n.14 (1st Cir. 1992) (issues raised for first time in reply brief deemed waived), but decline to impose sanctions. 15 16 VanHaaren v. State Farm, et al, No. 92-1667 VanHaaren v. State Farm, et al, No. 92-1667 HIGGINBOTHAM, Circuit Judge, dissenting. _____________ The majority has written a very thoughtful, carefully reasoned and meticulously cited opinion. But regretfully I must dissent. Normally I would agree with the court's conclusion that: As no reasonable trier of fact could find that Van- Haaren acted in good faith in refusing to comply with State Farm's December 16 IME request, and [that] Van- Haaren inexplicably refrained from raising the preju- dice issue below, summary judgment for State Farm was proper. In this case, however, there is no evidence in the record to support the conclusion that VanHaaren failed to act in good faith in refusing to comply with State Farm's repeated IME requests. All that the record thus far reveals is that VanHaaren's counsel, _______ rather than VanHaaren himself, failed to act in good faith. In Dunbar v. Triangle Lumber and Supply Co., 816 F.2d _________________________________________ 126 (3d Cir. 1987), the Court of Appeals for the Third Circuit, considered the appeal of a plaintiff whose complaint had been dismissed pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute and comply with an order of the court. Plaintiff's counsel had failed to enter an appearance and had failed to attend a pre- trail conference in blatant disregard of numerous orders from the district court. The court finally dismissed plaintiff's com- plaint on the ground that plaintiff had failed to prosecute. The Court of Appeals reversed the district court and remanded the 16 case for further proceedings. The court reasoned that dismissal in this context is a "drastic tool" which may appropriately be invoked after careful analysis of several factors: (1) the extent of the party's personal responsibility; _______ ______________ (2) the prejudice to the adversary caused by the fail- _________ ure to meet the scheduling orders and respond to dis- covery; (3) a history of dilatoriness; (4) whether the _______ conduct of the party or the attorney was willful or in _______ bad faith; (5) the effectiveness of sanctions other __________ than dismissal, which entails an analysis of alterna- ________ tive sanctions; and (6) the meritoriousness of the ______________ _______________ claim or defense. Dunbar, 816 F.2d at 128 (emphasis in original). In plaintiff's ______ case, the Third Circuit determined that there was no evidence in the record that plaintiff "bore some responsibility for the flagrant actions of her counsel." Id. at 129. Accordingly, the ___ court concluded that the case should be remanded to permit a hearing based on all the above factors after notice to plaintiff and her counsel. Id. As an example to the district court about ___ the "alternative sanctions", other than the dismissal, which might be considered, the court of appeals assessed costs person- ally against plaintiff's counsel. Id. ___ Similarly in Velazquez-Rivera v. Sea-Land Service, ________________________________________ Inc., 920 F.2d 1072 (1st Cir. 1990), this circuit considered the ____ appeal of plaintiffs whose case had been dismissed due to coun- sel's failure to attend pre-trial conferences and comply with other orders of the district court. Before the district court, plain-tiffs' counsel, in an extraordinary act of contrition, "requested that sanctions be imposed against himself as attorney, but that, the plaintiffs not being at fault, the dismissal of the 17 action be set aside." Velazquez-Rivera, 920 F.2d at 1074. The ________________ district court denied counsel's requests and dismissed the action. This court reversed the district court and remanded the case for further proceedings. Id. at 1079. We reasoned that ___ "dismissal should be employed only if the district court has determined that it could not fashion an `equally effective but less drastic remedy.'" Id. at 1076. We also reasoned that it ___ was significant that the failure to follow the district court's orders was due to counsel's mistakes rather to any bad faith on the part of plaintiffs. Id. ___ Here, thus far the record reveals that VanHaaren's counsel, rather than VanHaaren himself, acted in bad faith in refusing State Farm's repeated IME requests. It seems to me a rather drastic and tragic remedy to dispose adversely of VanHaaren's claim because of the conduct of his attorney. Of course, it may very well be that VanHaaren himself knew of the IME requests, and himself refused to comply with them. If that is the case, then summary judgment in favor of State Farm would be appropriate. But, at the very least, the district court ought to hold a hearing to determine whether VanHaaren bears personal responsibility for the actions of his counsel. If VanHaaren does ____ not bear personal responsibility, and if failure to respond to ___ the IME requests was due simply to dereliction on the part of his counsel, then the court ought to consider a less drastic remedy than to dispose adversely of his action. One such remedy, pursuant to Velazquez and Dunbar might be in the form of sanc- _________ ______ 18 tions imposed or personal costs assessed against VanHaaren's counsel. For the foregoing reasons I respectfully dissent from the judgment of the court. 19