**Maria E. RIVERA FERNANDEZ, Plaintiff,**

v.

**CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, et al., Defendants.**

**Civil No. 93–2279(SEC).**

United States District Court, D. Puerto Rico.

Feb. 20, 1996.

Luis G. Rullán–Marín, San Juan, PR, for Plaintiff.

Frank Gotay–Barquet, Feldstein, Gelpi, Hernández & Gotay, Old San Juan, PR, ·for Defendants.

## ORDER

CASELLAS, District Judge.

Pending before the Court are plaintiff's Motion for Summary Judgment (**Docket # 17**) and defendants' Motion for Summary Judgment (**Docket # 11**). After careful examination of the applicable law and the parties' arguments, the Court finds that plaintiff's submission to an Independent Medical Examination ("IME") was a prerequisite for payment of the insurance proceeds. Accordingly, defendants' Summary Judgment Motion is **GRANTED** and plaintiff's Summary Judgment Motion is **DENIED**.

## SUMMARY JUDGMENT STANDARD

According to Fed.R.Civ.P. 56(c), a summary judgment motion should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir. 1994). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be "genuine," there must be sufficient evidence to·permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992). *See also, Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994).

■ Moreover, this Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflict-

ing evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

## ANALYSIS

### a. Plaintiff Should Have Submitted to an IME prior to Disbursement of Benefits

Defendants Connecticut Mutual Life Insurance Company (hereinafter "Connecticut Mutual") issued, in December of 1991, a disability insurance policy, number 8,036,062 with the plaintiff María E. Rivera Fernandez as beneficiary. (hereinafter "Rivera"). On March of 1992, plaintiff consulted Dr. Jose Luis Valderrábano Rivera. She continued her treatment with Dr. Valderrábano, who diagnosed her as suffering from Dysthymic Disorder and declared her totally disabled. Defendants Connecticut Mutual requested plaintiff to submit to an Independent Medical Examination ("IME") to determine the validity of her claim. Upon plaintiff's refusal to submit to an IME, Connecticut denied her claims for benefits under the policy. (Letter dated September 15, 1993 from Mr. Edward T. Myers to Mr. Luis G. Rullan, Docket # 11, Tab 10). Plaintiff's lawsuit ensued.

■ Rivera alleges that defendants breached the insurance contract when they denied her disability benefits pursuant to the policy, for her failure to submit to the IME. The relation between the parties in the present case is "purely contractual, since a contract of insurance is an executory contract, executed by the payment of the sum insured on a loss." J.A. Appleman & J. Appleman, 12 *Insurance Law and Practice* § 7001 at 3–4 (West Publishing Co. 1981) (hereinafter "Appleman"). An insurance contract, like any other contract, constitutes the law between the parties so long as it contains the conditions essential to its validity. Accordingly, the insurer and the insured bind themselves to comply with the terms and conditions of the policy. *Torres v. Commonwealth of Puerto Rico*, 92 J.T.S. 68. Moreover, "[i]f

the wording of a contract is explicit and its language is clear, its terms and conditions are binding on the parties." *Nieves v. Intercontinental Life Ins. Co. of P.R.*, 964 F.2d 60, 63 (1st Cir.1992).

■ Pursuant to the jurisprudence just described above, Rivera's claim hinges on the terms and conditions of the policy in dispute in the present case. Despite the various allegations of material fact proffered by the plaintiff, the only genuine issue which the Court must entertain in this case is whether under the terms and conditions indicated in the insurance policy issued by the defendant, plaintiff Rivera must submit to an Independent Medical Examination in order to be entitled to the insurance policy proceeds.

The policy issued by defendant to Rivera contained a provision that required Rivera to submit to an examination by a physician chosen by Connecticut Mutual. The clause reads:

> At reasonable intervals We may require the Insured to be examined by Doctors we choose. We will pay for any examination We may require. If the Insured fails to submit to such examination, We will stop paying benefits. We may require from time to time, satisfactory proof of the Insured's Income before and during the Disability. This proof may include, but is not limited to copies of the insured's W–2 form(s) and/or Income Tax returns.
>
> > Docket # 11, Policy Issued to Maria E. Rivera, # 8,036,062, p. 6, "Proof of Disability"

Rivera's refusal to submit to an IME revolves around the construction of the IME clause. She argues that the sentence "if the Insured fails to submit to such examinations, we will stop paying benefits" means that Connecticut Mutual cannot require her to submit to an IME prior to commencing payment of benefits. Rivera claims that defendants can only enforce the IME clause after she begins receiving benefits. This Court disagrees.

A recent decision by the First Circuit presented a similar scenario in *VanHaaren v. State Farm Mutual Automobile Insurance Co.*, 989 F.2d 1 (1st Cir.1993). In that case,

plaintiff brought an action under an uninsured motorist policy issued by defendant State Farm Mutual Automobile Insurance Company ("State Farm") to plaintiff Dennis VanHaaren ("VanHaaren"). The policy contained a clause which required VanHaaren to submit to an "examination by physicians chosen and paid by [State Farm] as often as [State Farm] reasonably may require." *Id.* at 2. Upon State Farm's repeated requests to conduct an independent medical examination ("IME"), plaintiff refused, since he considered the usual diagnosis of the orthopedist chosen by the insurer too conservative. Upon State Farm's denial of benefits, plaintiff brought an action in state court, which defendants later removed to federal court. The trial court entered summary judgment against plaintiff, holding that VanHaaren had forfeited coverage under the policy by his refusal to comply with State Farm's IME request.

The First Circuit affirmed the entry of summary judgment for defendant, as it noted:

> The IME clause would afford the insurer little protection if the insured were entitled to dictate the identity of the examining physician. Thus, the IME clause reasonably cannot be interpreted as affording an insured a veto power based on physician preference, as distinguished from reasonable and timely objection to the scheduled location, date or time, or to particular risks which the examination might pose to the health of the insured. The insured's preference for an examining physician more likely to provide a "favorable" (i.e., gloomier) diagnosis certainly cannot qualify as a reasonable basis for failing to accommodate the IME request, unless the clause is to be rendered meaningless. *VanHaaren,* 989 F.2d at 6–7.

The Court's reasoning in *VanHaaren* applies to the facts of the present case. The purpose of an IME clause in a disability insurance policy contract is to enable the insurer to ascertain its liability. To that end, the IME clause "should be reasonably and fairly construed" 3 Appleman § 1502 at 180. IME clauses help an insurer obtain information related to a pending claim in order to protect itself against fraud. By conducting its own investigation of the claim, which could include, at the option of the insurer, a medical examination of the claimant, the insurer can make an informed decision as to the validity of the claim; that is, whether to allow the benefits or to deny them. *See generally* 3 Appleman §§ 1391, 1502.

Rivera's argument that the IME clause requires defendants to pay before they can investigate whether she is disabled ignores the purpose and meaning of the IME clause. It would be illogical to require the defendants to first pay the plaintiff and then investigate whether the plaintiff deserved the payments under the policy.

The policy requires that Rivera must be disabled according to the terms delineated in the policy. If this Court adopted Rivera's interpretation, defendants could not effectively investigate and determine the validity of Rivera's claim prior to the payment of the disability benefits. This could produce an inefficient and unfair situation for defendants, where they would pay Rivera for her disability, although the IME subsequently established that Rivera was not disabled. This could only lead for increased litigation among the parties, as defendants would then file claim against the plaintiffs for the undeserved disability benefits.

Plaintiff's interpretation of the clause clashes with the rule of construction of insurance contracts under Puerto Rico law: "every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement or application attached to and made part of the policy." P.R.Laws Ann. tit. 26 § 1125 (1957).

■ Courts must give insurance policies a "practical, reasonable, and fair construction consonant which the apparent object and intent of the parties ... strained or forced constructions ... are to be avoided" *Keene Corp v. Insurance Co. of North America,* 597 F.Supp. 946, 950 (D.D.C.1984) (quoting 43 Am.Jur.2d *Insurance* 276 (1982)). Moreover, literal interpretation of one provision should be avoided if such interpretation leads to

unreasonable or absurd results. *Garman v. New York Life Ins. Co.*, 501 F.Supp. 51, 53 (N.D.Ill.1980).

It would be illogical to interpret the IME clause as one that would give defendants the right to request a medical examination as part of their investigation after the claim has been confirmed as valid, but not before. Accordingly, we hold that Rivera should have submitted to an IME prior to disbursement of disability benefits under the policy.

### b. Plaintiff's Refusal to Submit to an IME Constitutes Breach of the Insurance Contract

Rivera based her objection solely on her construction of the IME clause. She has alleged no inability to submit to an IME or other reasons which justify an exemption from undergoing the examination. The First Circuit has noted that an insured's refusal to submit to an independent medical examination, without a reasonable excuse, bars the insured from receiving the benefits under the policy contract. "A contracting party's insistence, 'wilfully or by mistake', on preconditions to performance not stated in the contract, constitutes a breach by anticipatory repudiation." *Van Haaren*, 989 F.2d at 5-7 (quoting 4 Arthur L. Corbin, *Corbin on Contracts* § 973, at 910 (1915)). Moreover, even if applicable state law permits an insured "to test the 'reasonableness' of an IME request prior to compliance without thereby committing an incurable breach, the insured must act in good faith in asserting a challenge to the IME request." *VanHaaren*, 989 F.2d at 6.

Rivera contends that she refused to submit to an IME because her own doctor, Dr. Jose Luis Valderrábano, had already properly diagnosed her condition; accordingly she argues that defendants did not have a right to demand an IME through their own doctors unless they first commenced to pay disability benefits. Rather than submitting to the examination, Rivera initiated this lawsuit. The expenses of the present case could have been avoided had Rivera submitted to the IME initially requested by defendants in April of 1993, more than four (4) months prior to the filing of the complaint. Rivera's reliance on the diagnostic of her own doctor to comply with the terms of the policy is untenable. Rivera's objection to the IME request "belie[s] a 'good faith' challenge." *VanHaaren*, 989 F.2d at 6.

Under Puerto Rican law, the breach by one of the parties of a clause in an insurance contract by one of the parties releases the other party to the contract from its obligations under such contract. *Cerveceria Corona v. Commonwealth Ins. Co.*, 115 D.P.R. 345, 351 (1984). Rivera's refusal to submit to the IME substantially obstructed Connecticut Mutual's investigation. Plaintiff filed this suit without first affording defendants the opportunity to fully investigate her claim. Her refusal constitutes a breach of the insurance contract. We note that Rivera' submission to medical examination within these proceedings will not cure Rivera's default under the insurance contract.

The First Circuit faced a similar scenario in *VanHaaren*. In that case, the insured submitted to a court-ordered medical examination after the suit was brought. The First Circuit ruled that such belated submission was insufficient to cure the contractual breach: "Nor is VanHaaren [the insured] saved by his eventual submission to the court order compelling his attendance at the January 14 IME. Were it otherwise, IME clauses would be reduced to little more than invitations to litigate IME requests" *VanHaaren*, 989 F.2d at 7. As correctly noted by defendants, Rivera cannot now escape the fate of her breach of the insurance contract.

Accordingly, defendants Motion for Summary Judgment against plaintiff is **GRANTED**. (**Docket # 11**) Plaintiff's Motion for Summary Judgment against defendants is **DENIED**. (**Docket # 17**) Therefore, plaintiff's complaint against defendants in the instant case is **DISMISSED**. Judgment shall follow accordingly.

**SO ORDERED.**