CYR, Senior Circuit Judge.
 

 The question before us is whether the “liquidated” unsecured indebtedness owed by appellant James N. Papatones on the date he filed his chapter 13 petition totaled less than $250,000, a prerequisite to eligibility for chapter 13 relief.
 
 See
 
 Bankruptcy Code
 
 *2303
 
 § 109(e), 11 U.S.C. § 109(e).
 
 [1]
 
 The United States Bankruptcy Court for the District of Maine and the Bankruptcy Appellate Panel for the First Circuit responded in the negative.
 

 We conclude that Papatones was ineligible for chapter 13 relief because the amount in which he was indebted to appellee Edward Elliott on the date of the filing of the chapter 13 petition had been adjudicated — at $276,-606.87 — by a court of competent jurisdiction prior to the chapter 13 petition and neither the prepetition adjudication itself nor the postpetition docketing of the judgment against Papatones violated the automatic stay which took effect immediately upon the filing of the chapter 13 petition.
 
 See
 
 Bankruptcy Code § 362(a)(1), 11 U.S.C. § 362(a)(1).
 
 [2]
 

 I
 

 BACKGROUND
 

 Following an evidentiary hearing on December 9, 1996, a Maine superior court justice found Papatones liable to Elliott for breach of trust. Prior to the conclusion of the hearing, the presiding justice announced that a money judgment would enter against Papatones in the amount of $276,606.87. Later in the day, Papatones filed a chapter 13 petition with the United States Bankruptcy Court for the District of Maine, whereupon the superior court proceedings were stayed pursuant to Bankruptcy Code § 362(a)(1).
 

 II
 

 DISCUSSION
 

 Papatones insists that he is eligible for chapter 13 relief notwithstanding the $249,999.99 ceiling on liquidated, unsecured indebtedness because the Elliott debt remained unliquidated at the time the chapter 13 petition was filed. Elliott demurs on the ground that he was awarded $276,606.87 in damages prior to the chapter 13 petition. Papatones responds that the Elliott indebtedness did not become “liquidated” before the chapter 13 petition was filed at 2:55 p.m. on December 9 because the presiding justice remained free to reconsider his
 
 ore tenus
 
 ruling at least until the judgment was docketed by the superior court clerk on December 10, one day after the automatic stay took effect.
 
 [3]
 

 
 *2304
 
 Since the amount owed Elliott had been adjudicated “to the penny”
 
 prior to
 
 the chapter 13 petition, yet the $276,606.87 judgment was docketed
 
 after
 
 the chapter 13 petition, we will assume, without deciding, that the Papatones debt did not become “liquidated” until the superior court judgment was docketed. The remaining inquiry, then, is whether the postpetition docketing of the judgment violated the automatic stay.
 

 As recently explained, section 362(a)(1) does not stay acts that are “essentially clerical in nature,” as for example “when an official’s duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official’s discretion or judgment....”
 
 Soares v. Brockton Credit Union (In re Soares),
 
 107 F.3d 969, 974 (1st Cir.1997).
 
 See also Rexnord Holdings, Inc. v. Bidermann,
 
 21 F.3d 522, 527 (2d Cir.1994);
 
 Savers Fed. Sav. & Loan Ass’n v. McCarthy Constr. Co. (In re Knightsbridge Dev. Co.),
 
 884 F.2d 145, 148 (4th Cir.1989). As Me. R. Civ. P. 58 makes crystal clear,
 
 [4]
 
 the superior court justice’s prepetition adjudication and direction for entry of a money judgment left nothing to the discretion or judgment of the superior court clerk.
 
 See, e.g., York Mut. Ins. Co. of Maine v. Mooers,
 
 415 A.2d 564, 566 (Me. 1980) (per curiam). Therefore, even though the oral direction for entry of judgment was not reduced to writing until the next day, neither that clerical act nor the mere ministerial notation of the judgment on the docket contravened the automatic stay.
 
 [5]
 

 
 *2305
 
 III
 

 CONCLUSION
 

 As the mere docketing of the Elliott judgment did not violate the automatic stay,
 
 see In re Soares,
 
 107 F.3d at 973-74, and it is conceded that an unsecured debt becomes “liquidated” in amount once reduced to judgment,
 
 see swpra
 
 note 3, the $276,606.87 unsecured, liquidated debt owed Elliott on the date of the filing of the chapter 13 petition rendered Papatones ineligible for chapter 13 relief as provided in Bankruptcy Code § 109(e).
 

 Accordingly,
 
 the judgment of the Bankruptcy Appellate Panel for the First Circuit is affirmed. Appellant shall bear all costs. SO ORDERED.
 

 [1]
 

 . Section 109(e) states:
 

 Only an individual
 
 with regular income
 
 that owes, on the date of the filing of the petition,
 
 noncontingent,
 
 liquidated, unsecured debts of less than $250,000
 
 and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000
 
 may be a debtor under chapter 13 of this title.
 

 Id.
 
 (emphasis added).
 

 [2]
 

 . Section 362(a)(1) states:
 

 11 U.S.C. § 362. Automatic stay
 

 (a) ..., a petition filed under section 301 ... of this title[] ... operates as a stay, applicable to all entities, of—
 

 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 

 [3]
 

 .The hypothetical advanced by Papatones is beside the point, since he concedes — and we accept
 
 arguendo
 
 — that a debt becomes "liquidated" in amount once it has been reduced to judgment.
 
 See
 
 Appellant's Reply Brief, at 4-5. Moreover, the hypothetical is belied by the superior court record, which discloses that the presiding justice repeatedly and categorically disavowed any ambivalence in announcing the $276,606.87 award and directing entry of judgment before concluding the evidentiary hearing: (i) initially, by adverting to "the money judgment that will be entered today ... ”; (ii) then, after relating detailed findings of fact, by announcing: "I’m going to award the following judgment ... actual damages in the amount of one hundred and seventy-six thousand six hundred and six dollars and eighty-seven cents[.]”; and (iii) following further findings, by stating: "... for punitive or exemplary damages, I’m going to award a hundred thousand dollars.” Finally, the presiding justice added: "And with no hesitation, and no doubt on my part, I’m going to impose that judgment.”
 
 See York Mut. Ins. Co. of Maine v. Mooers,
 
 415 A.2d 564, 566 (Me.1980) (per curiam) ("No particular form is required for such direction of an entry of judgment so long as it reflects an adjudication of the dispute before the court”).
 

 We note as well that appellant belatedly protests resort to the superior court hearing tran
 
 *2304
 
 script which
 
 he
 
 designated for inclusion in the record on appeal.
 
 See VanHaaren v. State Farm Mut. Auto. Ins. Co.,
 
 989 F.2d 1, 7 n. 6 (1st Cir.1993) (issues raised for the first time in appellate reply brief deemed waived). Although he did not object to the Bankruptcy Appellate Panel’s consideration of the transcript, appellant now insists that it was improper because the bankruptcy court did not consider the transcript and it alone could make findings of fact. Not only have these claims been waived,
 
 see Fish Market Nominee Corp. v. Pelofsky,
 
 72 F.3d 4, 6 (1st Cir.1995) (noting that arguments not raised in bankruptcy court are waived on appeal), but appellate courts may notice another court's record as an adjudicative fact.
 
 See
 
 Fed.R.Evid. 201;
 
 In re Henderson,
 
 197 B.R. 147, 156 (Bankr.N.D.Ala.1996) (“The court may take judicial notice of its own orders and of records in a case before the court,
 
 and of documents filed in another court.”)
 
 (citations omitted; emphasis added);
 
 see also United States v. Carr,
 
 25 F.3d 1194, 1203 (3d Cir.1994) (“Under Federal Rule of Evidence 201(f), judicial notice of an adjudicative fact may be taken by an appellate court.”).
 

 Finally, we leave various alternative resolutions of the present dispute for another time. Thus, for example, we neither endorse nor foreclose postpetition proceedings in the bankruptcy court to determine the liquidated amount of a debt "on the date of the filing of the petition” based on prepetition findings made in a non-bankruptcy forum of competent jurisdiction.
 
 See generally
 
 2 Lawrence P. King, Collier on Bankruptcy ¶ 109.06 (15th ed.1997).
 

 [4]
 

 . Rule 58 of the Maine Civil Rules states,
 
 inter alia:
 

 When the court directs that a party recover only money
 
 or costs or that all relief be denied,
 
 the clerk shall enter judgment forthwith upon receipt by the clerk of the direction;
 
 but when the court directs entry of judgment for other relief, the court shall promptly settle or approve the form of the judgment and direct that it be entered by the clerk.
 
 The notation of a judgment
 
 in the civil docket in accordance with Rule 79(a)
 
 constitutes the entry of the judgment;
 
 and the judgment is not effective before such entry.
 
 The entry of the judgment shall not be delayed for the taxing of costs.
 

 Me. R. Civ. P. 58 (Emphasis added.)
 

 [5]
 

 . We briefly address two additional arguments made by appellant. First, Rule 58 belies his contention, advanced without citation to authority, that the superior court did not complete its "judicial function” until the presiding justice
 
 signed
 
 the judgment. Rule 58 explicitly states that "[wjhen the court directs that a party recover only money ..., the
 
 clerk shall
 
 enter judgment
 
 forthwith
 
 upon receipt by the clerk of the direction....” Me. R. Civ. P. 58 ("the notation of a judgment in the civil docket ... constitutes the entry of judgment.”) There is no requirement that the presiding justice sign a money judgment. Furthermore, contrary to appellant’s suggestion,
 
 Breau v. Breau,
 
 418 A.2d 193, 195 (Me.1980), holds only that a superior court judgment remains
 
 unappealable
 
 until docketed.
 

 Second, in his reply brief before this court, appellant argues for the first time that the superi- or court judgment did not “liquidate” the indebtedness owed Elliott because the superior court has never adjudicated a Papatones counterclaim against Elliott. Not only is there no evidence in the record on appeal regarding any such counterclaim, but the argument long since has been waived.
 
 See VanHaaren,
 
 989 F.2d at 7 n. 6 (issues raised for first time in appellate reply brief deemed waived);
 
 Fish Market Nominee,
 
 72 F.3d at 6.